**Matter of the Application of Louis A. SEARS for a Writ of Habeas Corpus.**

**No. 364-57.**

United States District Court
S. D. California,
Central Division.

May 16, 1957.

Forno & Umann and Burton Marks, Los Angeles, Cal., for petitioner.

William B. McKesson, Dist. Atty., of Los Angeles County, and Jere J. Sullivan and Lewis Watnick, Deputy Dist. Attys., Los Angeles, for respondent.

MATHES, District Judge.

Petitioner seeks discharge from State custody under a writ of habeas corpus issued upon his petition challenging the constitutionality of §§ 25009 and 26104 of the California Corporations Code.

The return filed by respondent Sheriff asserts that petitioner is held under a valid final judgment and sentence of the State court following conviction of the crime of violating the above-cited provisions of California's laws regulating the sale of corporate securities.

Petitioner's extensive arguments, that the California statutes in question are repugnant to the Federal Constitution, were presented to and rejected by the appellate courts of California. See People v. Sears, 138 Cal.App.2d 773, 292 P.2d 663 (Hearing in California Supreme Court denied, Feb. 29, 1956).

These same constitutional issues are now tendered here, but respondent urges that they cannot properly be reached in this proceeding because petitioner has failed to exhaust his adequate State remedies.

Section 2254 of Title 28 of the United States Code provides in part that: "An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner."

The Reviser's Note to 28 U.S.C. § 2254 advises that: "This new section is declaratory of existing law as affirmed by the Supreme Court" [28 U.S.C.A. § 2254 note, p. 723] in Ex parte Hawk, 1944, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572.

There it was declared per curiam that: "Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies in the state courts and in this Court by appeal or writ of certiorari, have been exhausted." 321 U.S. at pages 116–117, 64 S.Ct. at page 450; see: Brown v. Allen, 1953, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; Darr v. Burford, 1950, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761; White v. Ragen, 1945, 324 U.S. 760, 764, 65 S.Ct. 978, 89 L.Ed. 1348; cf: Frisbie v. Collins, 1952, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541; Wade v. Mayo, 1948, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647.

Here, the California District Court of Appeal affirmed petitioner's conviction on January 30, 1956, and a hearing on petitioner's appeal was denied by the California Supreme Court on February 29, 1956. 138 Cal.App.2d 773, 292 P.2d 663. The way was thus clear, early in 1956, for petitioner to seek review in the United States Supreme Court of the federal constitutional questions now tendered, either by appeal pursuant to Supreme Court Rule 10 et seq., or by writ of certiorari pursuant to Supreme Court Rule 19 et seq. 346 U.S. 956–977, 74 S.Ct. 937–953, 28 U.S.C.

Petitioner did file a timely notice of appeal "with the clerk of the court possessed of the record"—the California District Court of Appeal—as provided by Supreme Court Rule 11, but proceeded no further.

At length the State, as appellee, moved to dismiss the appeal pursuant to Su-

preme Court Rule 14(2); and the return shows that on February 18, 1957—almost one year after this remedy became available to petitioner—the California District Court of Appeal entered an order as follows: "No record on appeal having been filed within the time provided therefor, the motion to dismiss appeal is granted and the appeal to the United States Supreme Court is dismissed."

A remedy is not exhausted, within the meaning of 28 U.S.C. § 2254, by means of a mere procedural pretense. Hence the filing of a notice of appeal, followed by unexcused failure to take any steps to docket the case as required by Supreme Court Rule 13, with resultant dismissal of the appeal, may not be said to amount to exhaustion of a remedy.

By the same token, it may not be said that the remedy of certiorari has been exhausted by the mere filing of a sheet of paper entitled "Petition for Writ of Certiorari", making no effort to comply with Supreme Court Rule 23, 346 U.S. 971–974, 74 S.Ct. 948–950, and thus inviting certain denial.

Exhaustion of a remedy denotes at the least a bona fide effort to pursue the remedy; and bona fide is a term which "signifies a thing done really, with a good faith." Ware v. Hylton, 1796, 3 Dall. 198, 240, 3 U.S. 198, 240, 1 L.Ed. 568.

Before State remedies have been exhausted within the requirement of 28 U.S.C. § 2254, there must have been some good-faith effort to do all that reasonably could be done under the circumstances to pursue every adequate and available remedy with effect. Both reason and policy sustain this holding. Cf. United States ex rel. Peckham v. Ragen, 7 Cir., 1957, 241 F.2d 318.

By way of excuse, and as claimed "circumstances rendering such process ineffective to protect the rights of the prisoner" within the meaning of 28 U.S.C. § 2254, petitioner alleges: "That during the pendency of your petitioner's appeal in the Supreme Court of the United States, your petitioner was informed by his attorneys that the appeal to the United States Supreme Court would be a long and costly one. That due to the complexity of the issues, they would ask for additional time to prepare the appeal and that they were considering associating other attorneys in the matter. That your petitioner's attorneys informed your petitioner that your petitioner would have to bring forward money to cover the time and expense of the preparation of the appeal and the general attorneys' fees, and that otherwise the appeal would have to be abandoned. Your petitioner was also informed that there was a way for him to appeal in pauperis, but that due to your petitioner's peculiar situation that this route would not be available. That your petitioner asked his attorneys to get as long an extension of time as possible so that he could pay his attorneys' fees, not only for his appeal to the United States Supreme Court, but pay the attorneys' fees in arrears for the appeal to the District Court of Appeal of the State of California and for the petition to the Supreme Court of the State of California."

The petition continues: "That although your petitioner has a house, said house has a mortgage on it and during the proceedings mentioned above your petitioner's corporation was going through bankruptcy proceedings in the State of Nevada and your petitioner was paying back those persons who had loaned him money during the formation of the Nevada corporation, and had no money whereby to pay his attorneys. That further, your petitioner was at all times informed that he had a meritorious appeal, but that his attorneys could not and would not proceed without their fees and as a result, your petitioner was forced to abandon his appeal. That all other State remedies as provided by the Law of the State of California have been exhausted and your petitioner has no other speedy or adequate remedy at law."

Since the petition is verified by the oath of petitioner and the quoted allegations are not denied by the return,

the facts thus alleged are to be taken as true. Whitten v. Tomlinson, 1895, 160 U.S. 231, 242, 16 S.Ct. 297, 40 L.Ed. 406.

■ The rule is well expressed by Judge Lumbard in United States ex rel. Embree v. Cummings, 2 Cir., 1956, 233 F.2d 188, that: "Where the only state remedies are inaccessible to a prisoner because of his poverty, his failure to pursue those remedies does not bar him from applying to the federal courts for relief". 233 F.2d at page 189.

But here petitioner has shown no real effort to prosecute his appeal to the United States Supreme Court. No showing is made that he exhausted the possibilities under Supreme Court Rule 13 to "enlarge the time for docketing the case". 346 U.S. 959, 74 S.Ct. 939. Neither did petitioner make any effort to proceed in forma pauperis pursuant to Supreme Court Rule 53. 346 U.S. 1003–1005, 74 S.Ct. 973–974.

That beneficent rule provides in subdivision 2 that: "Notwithstanding any other provision of these rules, a party moving for leave to proceed in forma pauperis who shows that he was unable to obtain a certified copy of the record in the court below without payment of fees and costs need not file such a record with his jurisdictional statement, petition for writ of certiorari, or motion for leave to file." 346 U.S. at page 1004, 74 S.Ct. at page 973.

And in subdivision 6 that: "If, in a case presented under this rule, the court enters an order noting or postponing probable jurisdiction, or granting a writ of certiorari, and the case is set down for argument, it will be transferred to the appellate docket, and the court will make such order respecting the furnishing and printing of the record as may be appropriate. The court may, in any case presented under this rule, require the furnishing and printing of the record prior to its consideration of the motion papers." Ibid.

And further in subdivision 7 that: "Whenever the court appoints a member of the bar to serve as counsel for an indigent party, the briefs prepared by such counsel will, unless he requests otherwise, be printed under the supervision of the clerk; and the clerk will in any event reimburse such counsel to the extent of first-class transportation from his home to Washington and return in connection with the argument of the cause." Id., 346 U.S. at page 1005, 74 S.Ct. at page 974.

Petitioner's only pretense at an explanation why he made no effort to avail himself ex gratia of this generous informa-pauperis procedure is the allegation that: "Your petitioner was also informed that there was a way for him to appeal in pauperis, but that due to your petitioner's peculiar situation that this route would not be available."

What the "peculiar situation" was is left entirely in the unalleged, unexplored domain of conjecture. Petitioner was in attendance throughout the two hearings held upon his original and amended petitions in this proceeding. He has been represented throughout by the same attorneys who, as petitioner alleges, "could not and would not proceed without their fees" and so forced petitioner "to abandon his appeal" to the United States Supreme Court. Yet nothing has been offered to explain the willingness of the attorneys to proceed here in March, after they had obdurately refused in February to lift a finger to preserve and prosecute petitioner's appeal to the United States Supreme Court.

■ Both the facts shown and the lack of candor in their presentation compel the finding that petitioner did not make a good-faith effort to prosecute with effect his appeal to the United States Supreme Court.

Petitioner has not then "exhausted the remedies available in the courts of the State", within the meaning of 28 U.S.C. § 2254; nor has he shown "the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." Ibid.

Accordingly the amended petition must be denied, the writ of habeas corpus discharged, and petitioner remanded to State custody.

Attorneys for respondent will, within ten days, serve and lodge with the Clerk findings of fact, conclusions of law and order accordingly, to be settled pursuant to Local Rule 7, West's Ann.Code.

If petitioner desires to appeal this ruling, a certificate of probable cause will be issued. 28 U.S.C. § 2253.