STATE OF WEST VIRGINIA

*v.*

STANLEY BOSWORTH, *Judge of the
Circuit Court of Randolph County, et al.*

(No. 11001)

*and*

STATE OF WEST VIRGINIA

*v.*

STANLEY BOSWORTH, *Judge of the
Circuit Court of Randolph County, et al.*

(No. 11002)

Submitted August 1, 1958. Decided September 23, 1958.

726

*W. W. Barron,* Attorney General, *W. Bernard Smith,* Assistant Attorney General, *Robert E. Maxwell,* Prosecuting Attorney of Randolph County, for relator.

*John A. Cain, John A. Mosesso,* for respondents.

GIVEN, JUDGE:

The controlling facts and the principles of law involved in these two original proceedings are the same, and one opinion suffices. An order entered in each proceeding, denying the writ therein prayed for, was entered on the seventh day of August, 1958. The proceedings were disposed of on the petitions, answers of the defendant Judge, replies of the State to the answers, briefs and oral arguments.

James Harrison Knox and Brenton Franklin Arbogast were indicted by a grand jury of the Circuit Court of Randolph County, at the regular February, 1958, Term of court, for a felony, armed robbery. Separate jury trials were had, and Arbogast was found guilty of armed robbery. Knox was found guilty of an attempt to commit armed robbery. Each defendant was, on the twenty-eighth day of March, 1958, sentenced to a term of fifteen years in the State Penitentiary. At the time of the entry of the orders imposing sentences, defendants "requested the right to file a petition with this Court and to be heard without further notice to the State or without the matter being included in the call for such Special Term to pray for an order directing the State to pay for the transcribing and printing of the record and all other costs * * * in his application for writ of error."

On April 7, 1958, a special term of court was called, to commence on the twenty-first day of April, 1958, "to consider any matters which attorneys concerned deem necessary pertaining to the recognizances of James Harrison Knox and Brenton Franklin Arbogast * * * and any matters pertaining to applications of said parties to the Supreme Court of Appeals of this State for a Writ of Error * * *".

On April 9, 1958, counsel for one of the convicted defendants wrote a letter to the Prosecuting Attorney of Randolph County, saying: "I am enclosing you herewith copies of three affidavits which we expect to file at your special term on April 21, 1958." On that day, petitions of the convicted defendants, together with affidavits, were tendered to and filed by the court. The petitions prayed for orders directing the official court reporter "to furnish a transcript of the evidence to the defendant in order that he might seek a Writ of Error * * *". The State objected to the prayer of the petitions and moved the court for a hearing and the taking of testimony on the issues raised by the petitions, and further "moved the court for the right to cross-examine the affiants * * * [and] to file counter-affidavits at a later date". The State filed no answer to either of the petitions. No counter affidavits were tendered for filing by the State. The several motions were overruled "because the State had had sufficient notice * * * of this hearing * * *". Thereupon, the court directed the court reporter to prepare transcripts of the evidence adduced at the trials, and ordered that the costs thereof be "paid for by the State of West Virginia". To prevent the carrying out of this order the two instant proceedings in prohibition were instituted in this Court by the State.

Defendants were represented by different counsel at the trials of the respective cases. In each case, however, counsel was employed by relatives of defendant. The affidavits filed at the time of the entry of the order relating to the payment of costs of the transcripts of the evidence established prima facie that neither of defendants had any in-

come or property sufficient to pay for a transcript of the evidence, nor any "means of obtaining same". No effective procedure whereby a convicted defendant may apply to this Court for a writ of error without a transcript of the evidence is provided by statute, except where the error or errors complained of appear from the record and are such that they may be considered and determined by the appellate court independently of evidence not transcribed. While the allowing of a writ of error in a criminal case by this Court is not a matter of right to a defendant, no rule or principle of law denies a defendant convicted of a felony the right to petition this Court for a writ of error, if the application be made within the time provided by statute.

The pertinent statute, Code, 51-7-7, as amended, reads: "In any case wherein the court has appointed counsel for an indigent person under indictment for either a misdemeanor or felony and such indigent accused has been tried and found guilty under such indictment and desires to seek an appeal or writ of error from the court's judgment on such conviction, the court, upon written request of such convicted person's counsel setting forth the grounds upon which the appeal or writ of error will be sought, shall authorize and direct the court reporter to furnish a transcript of the testimony and proceedings of the trial, or such part or parts thereof as counsel shall have indicated in his request to be necessary, to the convicted person, without charge to him, for use in seeking his appeal or writ of error, and the cost of such transcript in the case of a misdemeanor conviction shall be certified by the judge of the court to the county court of the county wherein the accused person was convicted and shall be paid out of the county treasury thereof, and in cases of felony convictions the cost of such transcript shall be certified by the judge of the court to the auditor of the State and shall be paid out of the treasury of the State from the appropriation for criminal charges." It may be helpful to notice that our statute requires the furnishing of a free transcript whether the conviction be for a felony

or a misdemeanor, where indigency of the defendant is established, which would appear to indicate an intention on the part of the Legislature that all indigent persons convicted of crimes should be accorded the same right as to the making of applications for writs of error. In this respect, the statute differs from many of those considered in cases cited.

In *Linger* v. *Jennings,* 143 W. Va. 57, 99 S. E. 2d 740, we held that the pertinent statute, quoted above, was not unconstitutional, and that the State can not enact legislation favoring "one class of indigent defendants over any other class of indigent defendants in criminal proceedings". It was contended in that case, as in the instant proceedings, that the statute made express provisions for the furnishing of a free transcript by the State only to indigent defendants for whom the courts appoint counsel, and that the courts are not required, and are without power, to order such transcripts in other cases. That position, however, was not followed or approved. It was, in the opinion, clearly pointed out that to so interpret or apply the statute would render it unconstitutional, as violative of due process. The conclusions therein reached were made necessary, and appear logical, by the holdings in *Griffin* v. *People of the State of Illinois,* 351 U. S. 12, 76 S. Ct. 585, 100 L. ed. 891. Though principles therein applied were first applied to a situation like the one then facing the court, such principles are not new, for it has universally been held by the courts of this country that defendants in criminal proceedings are denied due process of law when not accorded a fair and impartial trial. It can hardly be contended that a fair and impartial trial is accorded a defendant, or that he has been treated equally before the law, where he is denied rights or privileges because of his indigency which may be obtained by those financially able to pay for them. Holdings of courts relating to the constitutional rights of such a defendant to be represented by counsel may furnish sufficient illustration of the application of such principles.

The State further contends that the circuit court exceeded its jurisdiction in requiring the preparation of the transcripts at the expense of the State, in that the court was not authorized to so expend public money, and that the State was denied a fair hearing as to the facts of indigency of defendants set out in the affidavits.

Without intimating any view as to whether any legislative authority is necessary to authorize expenditure of State revenues for such purpose, the according to a defendant in a criminal case a right guaranteed to him by the Constitution, we are of the view that the statute quoted above provides such authority. A reading of the statute clearly requires that, in cases of felony convictions, "the cost of such transcript shall be certified by the judge of the court to the auditor of the State and shall be paid out of the treasury of the State from the appropriation for criminal charges." Stronger or more clear authority can hardly be imagined.

We have concluded that the State was not improperly denied an opportunity to present evidence relating to the ability of defendants to pay for transcripts. The State had ample notice, not later than March 28, 1958, that a special term of the circuit court would be called for the very purpose of having settled the matters relating to the furnishing of transcripts, and on April 7, 1958, a special term was actually called. On April 9 copies of affidavits filed by defendants, or, at least, some of such affidavits, were mailed to counsel for the State. Since the special term was called for April 21, 1958, it appears probable that the State had ample notice in time for preparation for the hearing, yet no denial of the matters alleged in the petitions then tendered the court, or the affidavits in support of such petitions, was made by the State. Determination of questions as to whether the State was entitled to further time was a matter within the discretion of the trial court. We can not say that such discretion was abused. See *Adkins, Administratrix* v. *DuPont Company*, 335 U. S. 331, 69 S. Ct. 85, 93 L. ed. 43, 11 A. L. R. 2d 599;

*Braden* v. *Commonwealth of Kentucky*, 277 S. W. 2d 7; *State* v. *Moore* (N. D.), 82 N. W. 2d 217; *Riley* v. *State*, 49 Ariz. 123, 65 P. 2d 32; *Barber* v. *Gladden, Warden*, 210 Or. 46, 298 P. 2d 986; *People* v. *Cadogan*, 163 N. Y. S. 190, 4 Misc. 2d 744.

The State contends that the circuit court abused its discretion, and thereby lost jurisdiction, in refusing to permit it to cross-examine the persons who signed the affidavits relating to the indigency of defendants. Assuming that the affiants were present and cross-examination could have been made without unreasonable delay, we think of no valid reason why cross-examination should not have been permitted. Cross-examination is a right jealously guarded against encroachment, but the right is not unlimited. See *State* v. *Justice*, 135 W. Va. 852, 65 S. E. 2d 743; *Ball* v. *Wilson*, 98 W. Va. 211, 127 S. E. 22. In some such cases the State may be able to completely refute a prima facie showing of indigency by mere cross-examination. However, the action of the trial court in the instant case, though it be considered error, which we need not decide, would not constitute such an error, or abuse of discretion, as would require the issuance of writs of prohibition. See *State ex rel. Gordon Memorial Hospital* v. *West Virginia State Board of Examiners for Registered Nurses*, 136 W. Va. 88, 66 S. E. 2d 1; *State ex rel. Vineyard* v. *O'Brien, Judge*, 100 W. Va. 163, 130 S. E. 111; *Bracey* v. *Robinson, Judge*, 83 W. Va. 9, 97 S. E. 295; Annotation 1 A. L. R. 2d 1964 at 1966.

It is further contended by the State that the *Griffin* and *Linger* cases do not have the effect of requiring the furnishing of a free transcript to each convicted defendant who may file an affidavit of indigency. With that position we agree. Indigency of a convicted defendant is a question of fact, and, where timely controverted, must be, like other such questions of fact, determined by the court. Necessarily, the fact of indigency of a convicted defendant must be first determined by the trial court, and the control of hearings on that question, as well as the de-

termination of the existence of indigency, rests in the sound discretion of such courts, a discretion this appellate court will not disturb unless clearly abused. Questions relating to the existence of indigency were not considered in the *Griffin* or *Linger* cases, indigency in such cases not having been controverted. See Annotation, 55 A. L. R. 2d 1072; Annotation, 100 A. L. R. 321.

Being of the views indicated, the writ prayed for in each case was denied and the rule previously awarded therein discharged.

*Writs were denied;*
*rules were discharged.*