Lindy GIVEN, Petitioner,

v.

Otto C. BOLES, Warden of the West Virginia State Penitentiary, Respondent.

No. 1451–W.

United States District Court
N. D. West Virginia.

Feb. 11, 1966.

Thomas A. Goodwin, Wheeling, W. Va., for petitioner.

C. Donald Robertson, Atty. Gen. of West Virginia, George H. Mitchell, Asst. Atty. Gen. of West Virginia, Charleston, for respondent.

MAXWELL, Chief Judge.

Lindy Given, an inmate of the West Virginia Penitentiary, is presently in the custody of Respondent, serving an indeterminate sentence of not less than five, nor more than eighteen years, imposed by the Criminal Court of Raleigh County, West Virginia, on November 12, 1958. The Petitioner was convicted by a jury of second degree murder several weeks prior to his sentencing date. After having unsuccessfully petitioned the West Virginia Supreme Court of Appeals for a writ of habeas corpus, Given petitioned this Court for a writ of habeas corpus and his release.

The question presented to this Court is whether the Clerk of the Raleigh County Criminal Court prevented Given from appealing his case within the statutory time period, by unjustifiably refusing to give to Given's mother the names of the twelve jurors empaneled in his case and a transcript of the questions and answers put to them on voir dire.

Charles F. Paul, District Judge, now deceased, issued an order to show cause,

and Respondent answered. Counsel was appointed for the Petitioner, and a plenary hearing was held before the District Judge on January 29, 1965. Following Judge Paul's death, all parties stipulated that the proceedings might be submitted to this Court upon the record without further testimony or hearing.

This Court, in keeping with the spirit of the stipulation, has fully reviewed the record and has made a detailed study of the testimony adduced at the plenary hearing.

Although Given has not followed the guide lines laid down in Miller v. Boles, 248 F.Supp. 49 (N.D.W.Va.1965), the plenary hearing in this case was conducted prior to Miller v. Boles. The same case filed now, however, would not be considered because of Petitioner's failure to exhaust State remedies.

█ As to the merit of the issues presented upon this application, this Court finds, as a matter of fact, that Given abandoned all intent to appeal, if any he had, before the statutory appeal time period had expired. Accord, United States ex rel. Hanson v. Ragen, 166 F.2d 608, 611. (7th Cir. 1948). This conclusion is supported by the fact that Given's mother, testifying for Petitioner, acknowledged that she talked, during the appeal period, with three attorneys, including the attorney who had defended her son at trial; that each attorney declined to handle an appeal after going over possible trial court errors. There is also some testimony that a fourth attorney was unsuccessfully contacted. Both Petitioner and his mother thereafter attempted no further effort to seek appeal, until many months later, after the appeal time had expired. Petitioner, moreover, does not contend that after these self-employed attorneys declined to

seek an appeal in his behalf he timely sought court appointed counsel to attempt an appeal. This, therefore, is another reason for concluding that Petitioner determined to abandon his intent of appealing his criminal conviction, during his statutory appeal period. This Court's conclusion is also merited by the Respondent's averment that the court reporter did transcribe the requested portion of the record, but that it was never picked up. And finally, this Court feels that its conclusion is justified because no statement has ever been made that an appeal was the object of the exceptionally limited portion of the trial record.

█ This Court further finds, as a matter of fact, that even if Given had a timely intent to appeal, and even if as a factual matter he did not abandon his intent to appeal, neither he nor his mother communicated their intent to appeal, within the statutory appeal time, either as an indigent or as a non-indigent, to the Judge, Clerk of the Court, or any other court official. The only suggested communication of an expressed intent to take a timely appeal was with the above mentioned attorneys, and, as earlier noted, once these attorneys reviewed Petitioner's case and determined against representing him on appeal, they so advised Petitioner or his mother. Thereafter, no further action was taken by either Petitioner or his mother.

It is apparent that a policy of full notification by one party to another underlies the applicable West Virginia Code sections on appeal, and, in particular, Chapter 58, Article 4, Sections 3, 5, 6 (Michie's Code, Sections 5770, 5772, 5773), and Chapter 58, Article 5, Sections 5 and 6 (Michie's Code, Sections 5791 and 5792) [1961].[1]

Although Given's claim of constitutional deprivation is based on his status

---

1. Any person who is a party to any controversy in such court of limited jurisdiction, wishing to * * * appeal * * *, may present a petition therefor to the circuit court of that county * * * which petition shall assign errors. (58–4–3 [5770]).

At the instance of any person who desires to present such petition, the court

* * * may * * * upon notice in writing to the opposite party * * *, make an order suspending the execution * * *. (58–4–5 [5772]; 58–5–5 [5791]).

Such petition * * * shall be first filed in the office of the clerk of the court of limited jurisdiction wherein the judg-

as a non-indigent, and not as an indigent, it is helpful to note that the legislative and judicial policy of positive notification has also permeated indigent appeals cases. Chapter 51, Article 7, Section 7, of the West Virginia Code Ann. (Michie's Code, Section 5251[1]) (1961) provides that transcripts will be furnished indigent persons *"upon written request* (emphasis added) of such convicted person's counsel *setting forth the grounds* (emphasis added) upon which the appeal or writ of error will be sought." In the leading cases upholding the indigent's right to a transcript for purposes of appeal, it is apparent that the indigent had first communicated, clearly and distinctly, his desire to use the transcript in an attempt to appeal, e. g., Griffin v. Ill., 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Eskridge v. Washington, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958); United States ex rel. Brown v. Lane, 196 F.Supp. 484 (N.D.Ind.1961), aff'd 302 F.2d 537 (7th Cir. 1962); Kershner v. Boles, 212 F. Supp. 9 (N.D.W.Va.1963).

In view of the policy underlying West Virginia Code, Chapter 58, Articles 4 (Sections 3, 5, 6) and 5 (Sections 5 and 6), supra, there is no reason why this clear and distinct communication should not also be called for in non-indigent cases, especially since the right to seek appeal, or the right to seek a writ of error, is statutory. See West Virginia Constitution, Article VIII, Section 6; Chapter 51, Article 7, Section 7, of the West Virginia Code Ann. (Michie's Code, Section 5251[1]) (1961); Linger v. Jennings, 143 W.Va. 57, 99 S.E.2d 740, 742 (1957); State v. Bosworth, 143 W.Va. 725, 105 S.E.2d 1 (1958); American Surety Co. v. United States, 239 F. 680 (5th Cir. 1917); 4 Am.Jur.2d, Appeal and Error, Section 267, p. 761, fn. 20 (1962).

■ This Court believes, therefore, that in both indigent and non-indigent cases sound legal principles require a

clear and distinct communication of one's intent to appeal. See 4 Am.Jur.2d, Appeal and Error, Sections 310–311, pp. 795–797 (1962); 5 Wharton, Criminal Procedure, Appeal, section 2253, pp. 506–511 (1957); 4 Fed.Dig., Appeal and Error, Sections 358, 360–362, 365, 396 (1940). Cf., Application of Sears, 152 F. Supp. 55, 57 (S.D.Cal.1957); Brown v. Buchkoe, 244 F.2d 865 (7th Cir. 1957); United States ex rel. Darcy v. Handy, 130 F.Supp. 270, 274 (M.D.Pa.1955), aff'd 224 F.2d 504 (3rd Cir. 1955), 351 U.S. 454, 76 S.Ct. 965, 100 L.Ed. 1331 (1956); Schechtman v. Foster, 172 F.2d 339 (2d Cir. 1949). Accord, 37(a) (1) Fed.Rules of Crim.Proc.; 4 Barron, Fed.Practice and Procedure, Taking Appeal, Section 2331, pp. 315–317 (1951), supp. Section 2331, pp. 373–374 (1964).

To hold otherwise would subject State trial courts to an illogical burden in each case where a convicted defendant failed to manifest his intent to appeal. The courts would be compelled to continuously inquire of the defendant whether or not he intended to pursue his cause further, until the statutory appeal time had expired.

■ Consequently, this Court concludes that where a State prisoner habeas corpus applicant claims constitutional deprivation of his right to have appellate review of his trial court conviction, he must demonstrate in this Court that he has expressed in the positive manner that the aforementioned Code sections suggest, to some proper trial court official, in a clear and distinct fashion, his timely intent to seek direct appeal in the State court system. Absent such timely, positive, expressed intent, as here, this Court cannot, at a later date, say such appeal request was made and that the trial court officials violated their constitutional and statutory responsibility to the habeas corpus applicant.

Therefore, an order will be entered denying Given's petition.

---

ment, decree or order complained of was entered * * *. (58–4–6 [5773]).

Such petition * * * shall be first filed in the office of the clerk of the cir-

cuit court wherein the judgment, decree or order complained of was entered * * *. (58–5–6 [5792]).