343 S.E.2d 673

**The BD. OF ED. OF COUNTY OF MONONGALIA, etc., et al.**

v.

**The Hon. Larry V. STARCHER, Judge, etc., et al.**

**No. 17013.**

Supreme Court of Appeals of West Virginia.

April 2, 1986.

Dissenting Opinion May 14, 1986.

Herbert G. Underwood, Irene M. Keeley, Gordon H. Copland, Steptoe & Johnson, Clarksburg, for petitioners.

David L. Solomon, Michael L. Solomon, Solomon & Solomon, Morgantown, for all respondents but Judge Starcher.

Regina Charon, Morgantown, for Patricia Longfellow, et al.

Judge Starcher, pro se.

NEELY, Justice:

In 1973 and 1978 the voters of Monongalia County passed a special levy to support the public schools. In January, 1983 three school service workers employed by the Monongalia County Board of Education filed a class action against the board in the circuit court alleging that the board had failed to pay the special levy monies to school service workers in accordance with the terms of the levies. In this regard, the class action plaintiffs relied upon our holding in *Thomas v. Board of Education*, 164 W.Va. 84, 261 S.E.2d 66 (1979). In September, 1983, the circuit court dismissed the class action on the grounds that the plaintiffs had not exhausted their administrative remedies.

On 6 December 1983 the same service personnel filed a class *grievance* pursuant to the rules and regulations of the board seeking back pay for approximately 950 active and former employees. During December, 1983, and throughout all of 1984 the board and the grievants conferred frequently over settlement terms. Mr. Kenneth Legg, the Executive Director of the West Virginia School Service Personnel Association (SSPA), represented the grievants in these negotiations.

In October, 1984, several members of the Monongalia County Chapter of the West Virginia Education Association—Educational Support Personnel (WVEA) filed a second and separate grievance seeking back pay from the special levies. The board enlarged the scope of its settlement negotiations to include the second group of grievants and included both Mr. Steve Benson, the area representative for the WVEA, and Ms. Regina Charon, the WVEA group's attorney, in the settlement negotiations. The lead plaintiff in the initial grievance was Ms. Barbara McClain, who is employed as a secretary by the board and is President of the Monongalia County School Service Personnel Association. Patricia Longfellow, a secretary employed by the board and President of the Monongalia County Chapter of the West Virginia Education Association—Educational Support Personnel, filed the second grievance. Hereafter we shall refer to these two class grievances as the *McClain-Longfellow* grievance.

After extensive settlement negotiations, on 19 July 1985 the board publicly offered to pay affected employees a total settlement of $950,000 at a per diem, flat rate. By 21 August 1985, 774 of the 950 affected past and present service personnel had agreed. in writing to accept the board's offer to settle their claims.

Because the proposed settlement of the *McClain-Longfellow* grievance involved the expenditure of nearly a million dollars of public money, and because the authority of the board to compromise and settle such a claim was not clearly set forth in statutes or case law, the board filed a declaratory judgment styled *Board of Education v. McClain, et al.,* in the Circuit Court of Monongalia County for a court order declaring that (1) a disputed claim existed between the parties; (2) the board had the power to settle the claim; and, (3) the terms of the proposed settlement were fair and reasonable.

During the pendency of the *McClain-Longfellow* grievance settlement negotiations, Junior Joseph Bane brought a separate class action in circuit court against the board on behalf of himself and 33 other claimants who chose not to accept the proposed *McClain-Longfellow* settlement. In the declaratory judgment proceeding between the board and the *McClain-Longfellow* grievants, the circuit court certified the class, but thereafter held no further hearings in the *McClain-Longfellow* matter. In the 3 October 1985 order certifying the *McClain-Longfellow* class, the court found that the *Bane* claimants had "opted out" of the *McClain-Longfellow* class and would not be bound by any adjudication involving that class. We shall refer to Mr. Bane's this separate class action as the *Bane* case.

The circuit court took testimony in the *Bane* case, during which the judge examined a variety of salary documents and considered substantial evidence that he thought relevant both to *Bane* and *McClain-Longfellow.* Part of that evidence involved the testimony of Mr. Kenneth Legg of the SSPA who explained the history of the special levy problem in Monongalia County, the reason for a proposed settlement at a flat per diem rate, and other matters relevant to the proposed settlement. Based upon information gleaned in the *Bane* hearings, on 26 November 1985 the circuit court entered an order approving the proposed *McClain-Longfellow* settlement as "fair and equitable" and ordered the board to begin making payments to "the vast majority of the service personnel employees ... [who] choose to compromise any claim they may have against their employer" by 18 December 1985.

At the same time that the circuit court entered the judgment order in the *McClain-Longfellow* case, he also entered an order in the *Bane* case giving the *Bane* claimants substantially more money than the *McClain-Longfellow* claimants were to receive under the settlement.

Subsequently, the board indicated that it would ask the circuit court to set aside the judgment in the *Bane* case. On 3 December 1985, the attorneys for the board received a message from the circuit judge stating that he intended to set aside the *McClain-Longfellow* order if the board moved to set aside the order entered in the *Bane* case. On 6 December 1985 the board

moved to set aside the judgment order in *Bane* and the circuit court then set aside the judgment orders in both *Bane* and *McClain-Longfellow*.

On 15 January 1986, the board and Barbara McClain, on her own behalf and as representative of the original *McClain* grievants petitioned this Court for a writ of prohibition to bar the circuit court from setting aside its original order in the *McClain-Longfellow* declaratory judgment proceeding. Because the WVEA *Longfellow* grievants chose to be represented by their own counsel, Patricia Longfellow, both individually and as a representative of her class, was named as a party defendant. We granted the rule to show cause in prohibition under the criteria of Syl.Pt. 1 of *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979). During the full hearing on the prohibition in this Court it became apparent that the interests of Ms. Longfellow and her grievants were almost entirely congruent with Ms. McClain and her grievants. The one exception was that Ms. Longfellow urged the Court to mould its writ to require that the board immediately pay the $500,000 initial payment, with statutory interest from August, 1985 until the date of payment, to which the board agreed in the *McClain-Longfellow* settlement.[1]

■ The petitioners in the *Bane* class action appeared as the real parties in interest on behalf of the circuit court and urged us to sustain the trial court's ruling. In a nutshell, their argument is that Barbara McClain does not adequately represent the interests of her class and that the board has deviated from its original settlement agreement. Either of these grounds for sustaining the trial court's order would be meritorious were it raised by Ms. McClain, Ms. Longfellow, or any member of the classes they represent. But when raised by the members of the *Bane* class as to the *McClain-Longfellow* class, any failure on the part of the representative plaintiffs to represent members of their own classes is frivolous under the ancient rule of *res inter alios judicatae nullum aliis faciunt*.[2] Having opted out of the *McClain-Longfellow* class, the *Bane* litigants cannot now contest the *McClain-Longfellow* settlement. We have held that a trial court will protect the absent members of a class if the entire merits of a controversy are placed in issue. *Robertson v. Hatcher*, 148 W.Va. 239, 135 S.E.2d 675 (1964). But a group that deliberately opts out of a class is not absent in this sense. By opting out of the *McClain-Longfellow* class, the *Bane* litigants lost their standing to challenge the *McClain-Longfellow* settlement.

■ Furthermore, because the trial court held in its 24 September 1985 order that the *Bane* class "rights and interests would be unaffected by the adjudication" of the *McClain-Longfellow* litigation, the members of the *Bane* class cannot claim that they have been prejudiced.[3] The mem-

---

1. In this last regard, there is a factual quibble about whether the board resolution authorizing payment pursuant to the *McClain-Longfellow* settlement agreement contained an inadvertent error making the initial payment substantially less than that to which the parties agreed; however, counsel for the board stipulated in this Court that regardless of the reasons for the board resolution's deviation from the original *McClain-Longfellow* settlement, the board will pay the $500,000 that it agreed to pay. No one on the *McClain-Longfellow* side takes issue with that representation and stipulation. Accordingly, we find that notwithstanding any resolution to the contrary, the board both intended and now intends to stand by the terms agreed to in the *McClain-Longfellow* settlement.

2. Matters adjudged in a cause do not prejudice those who are not parties to it.

3. We note that it is not necessary to reach this issue through *W.Va.R.Civ.P.* 23. *W.Va. Const.*, art. VIII, § 6 provides:

"Circuit courts shall have original and general jurisdiction of all civil *cases* at law where the value or amount *in controversy*, exclusive of interest and costs, exceeds one hundred dollars unless such value or amount is increased by the legislature; ..." [Emphasis supplied by the Court].

The very jurisdiction of a circuit court in civil matters depends upon the existence of a "case" or "controversy." As the proceedings in this Court amply demonstrate, no party litigant in the *McClain-Longfellow* class action moved to have the order in that proceeding set aside. Thus there is no "case" or "controversy." Ordinarily, if the parties to a case or controversy agree to a particular settlement that does not violate public policy, it is the obligation of the circuit court to approve the settlement.

bers of the *Bane* class could have remained in the *McClain-Longfellow* class and protested the settlement as members of the class. *Ace Heating & Plumbing v. Crane Co.*, 453 F.2d 30 (3rd Cir.1971); Annot., 30 A.L.R.Fed. 846, § 7 (1971). The *Bane* litigants cannot have it both ways.·

■ Under *W.Va.R.Civ.P.* 23(c), circuit court approval is required before a class action may be dismissed or compromised. Technically, therefore, the circuit court did not necessarily act in excess of his jurisdiction. The court, however, did abuse his discretion because his grounds for setting aside the settlement were not that the settlement was not fair, reasonable, and adequate to any of the litigants who had elected to remain in the *McClain-Longfellow* class. Rather, his reasons were that the settlement had an adverse affect upon the *Bane* litigants who had opted out of the *McClain-Longfellow* class in the hope of doing better on their own. Even under a liberal reading of *W.Va.R.Civ.P.* 23(c) that is not a valid reason for setting aside a settlement.

■ Both the *McClain-Longfellow* grievants and the board support the original settlement. "Courts are not permitted to modify settlement terms or in any manner to rewrite the agreement reached by parties." *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1160 (11th Cir.1983). Only the board or a member of the *McClain-Longfellow* class has standing to protest the settlement. In setting aside the settlement on his own volition, the circuit court abused its discretion.

The reason the circuit court gave for setting aside the settlement in the *McClain-Longfellow* case was simply that the circuit court thought the board was behaving reprehensibly by contesting the order in the *Bane* case whilst settling with the *McClain-Longfellow* grievants. In this regard, the circuit court said in his 10 December 1985 order setting aside the *McClain-Longfellow* settlement:

Furthermore, in conference, the board's attorney did not seem overly concerned as to how the smaller group was

resolved—just that the whole matter be resolved. All parties either knew, or should have known, that this court intended to conclude the whole matter—and not allow the school administration to take one of the decisions and use it to beat the others into submission.

We are at a loss to see how entering into a voluntary settlement with one class of claimants makes it possible to browbeat and defeat the legitimate rights of another class of claimants. If anything, the *Bane* holdouts make the *McClain-Longfellow* settlement less attractive to the board. In class actions it is more typical that the members of the class with the strongest claims will want to opt out of the class to pursue their cases on their own. Accordingly, the remainder of the class will be made up of those with the weakest, if not frivolous claims. After such a sequence of events, the class' adversary, in this case the board, still must face its strongest opponents and has gotten very little for its settlement dollar. Although it can be argued that the *Bane* claimants would have more settlement leverage if they were members of a larger class, they had that opportunity and they opted out.

■ In Syllabus Point 2 of *Vapor Corp. v. Narick*, 173 W.Va. 770, 320 S.E.2d 345, we expressed our enthusiastic support of voluntary settlements when we said:

"The law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation; and it is the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contravention of some law or public policy." Syllabus Point 1, *Sanders v. Roselawn Memorial Garden, Inc.*, 152 W.Va. 91, 159 S.E.2d 784 (1968).

In Syllabus Point 1 of *Hinkle v. Black, supra,* we held:

In determining whether to grant a rule to show cause in prohibition when a court is not acting in.excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the overall economy of effort and money among litigants, law-

yers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

Certainly, under the *Hinkle* criteria prohibition is proper because the trial court clearly abused his discretion. The remedy of appeal is inadequate if the *McClain-Longfellow* claimants must wait until some final resolution of the *Bane* case. Certainly our granting prohibition relief will serve to enhance the overall economy of effort and money among litigants, lawyers and courts.

Accordingly, we issue a moulded writ of prohibition. The relief for which the petitioner board of education prays is awarded and the circuit court is prohibited from setting aside its original order in the *McClain-Longfellow* case, unless within thirty days of the entry of our judgment order in this prohibition proceeding the board shall have *failed to pay* the $500,000 in settlement monies to which it agreed in the *McClain-Longfellow* settlement plus statutory interest from the date the settlement was entered into by the parties.

Writ awarded as moulded.

McHUGH, Justice, dissenting:

Pursuant to its order of November 26, 1985, the Circuit Court of Monongalia County approved the compromise or settlement of the *McClain-Longfellow* action. The majority of this Court has held that the circuit court "abused its discretion" in setting that order aside. In so holding, the majority has concluded that (1) prohibition is a proper remedy to contest the circuit court's action, and (2) it is the "obligation" of a circuit court to approve a settlement agreed to by the parties, if the settlement "does not violate public policy." I disagree with those conclusions and, therefore, respectfully dissent.

As the majority indicates, the *McClain-Longfellow* action is a class action and is, thus, subject to Rule 23(c) of the West Virginia Rules of Civil Procedure. That rule, as well as its federal counterpart, provides that "[a] class action shall not be dismissed or compromised without the approval of the court."

The majority is correct, I believe, in its suggestion that "abuse of discretion" is a proper standard in reviewing the appropriateness of a settlement approval or disapproval under Rule 23. *Girsh v. Jepson*, 521 F.2d 153, 156 (3rd Cir.1975); *Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8th Cir.), *cert. denied*, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2nd Cir.1974); *United Founders Life Insurance Co. v. Consumers National Life Insurance Co.*, 447 F.2d 647, 655 (7th Cir.1971).

However, such a review is more suitable to an appeal from a circuit court's ruling than it is to a prohibition proceeding. As we stated in *Myers v. Frazier*, 173 W.Va. 658, 319 S.E.2d 782, 801 (1984): "[O]rdinarily prohibition does not lie for an abuse of discretion...." *See also* syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977). *Cf. State v. Bosworth*, 143 W.Va. 725, 731, 105 S.E.2d 1, 5 (1958). The majority concedes that the circuit court "did not necessarily act in excess of [its] jurisdiction." Moreover, the record in this action does not reveal the "substantial, clear-cut, legal errors" plainly in contravention of law, with regard to which this Court may employ prohibition in a "discretionary way" under *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979). Prohibition is not a proper remedy in this action.

With regard to a circuit court's approval or disapproval of a compromise or settlement under Rule 23(c), more than simply "public policy" should be considered. As stated in 3B J. Moore, *Moore's Federal Practice* § 23.80[4] (2nd ed. 1985):

[T]he matter of dismissal or compromise is left to the sound discretion of the trial

court. Its determination will be reversed only if it abuses that discretion.

. . . .

The burden is upon the proponents of a settlement to persuade the court that it is fair, adequate, and reasonable.

The cases contain many discussions of what standards the courts should apply in determining whether a settlement is "fair, adequate, and reasonable." Among the most important factors to be considered are:

(1) The strength of plaintiff's case on the merits balanced against the amount offered in settlement;

(2) Presence of collusion in reaching a settlement;

(3) The reaction of members of the class to the settlement;

(4) The opinion of competent counsel [;]

(5) The stage of the proceedings and the amount of discovery completed.

Accordingly, I am of the opinion that inasmuch as the majority has indicated that a circuit court's approval or disapproval of a compromise or settlement of a class action (under Rule 23) depends solely upon "public policy," the majority overlooks other relevant criteria a circuit court should consider. The majority's reasoning in this action is result-oriented and based upon a superficial analysis of legal principles.

I am authorized to state that Justice McGRAW joins me in this dissent.