366 S.E.2d 638

**F.S. & P. COAL COMPANY**

v.

**INTER–MOUNTAIN COALS, INC.**

No. 17430.

Supreme Court of Appeals of
West Virginia.

Feb. 23, 1988.

J.M. Tully, Summersville, for appellant.

Callaghan & Ruckman, Summersville, for appellee.

NEELY, Justice:

In December 1979, the appellant, F.S. & P. Coal Company, Inc., agreed to sell coal to the appellee, Inter–Mountain Coals, Inc. with payment based upon sampling and quality testing. In accord with that agreement, F.S. & P. Coal Company shipped 2,690.95 tons of coal to Inter-Mountain Coals, Inc. Apparently this shipment was combined by the appellee with coal from other sources. The appellee analyzed a total shipment of 6,072.45 tons of coal and from that analysis offered payment of $7,800 less than the amount claimed due by the appellant.

The appellant then instituted a $10,000 suit in Nicholas County Circuit Court to recover the difference due, plus interest, on the contract. Apparently the dispute between the parties centered on the co-mingling of coal for shipment and the quality of the coal as determined by sampling and analysis. The appellee denied all allegations and counterclaimed for $780.38. Before trial, an offer of settlement was made by Inter–Mountain Coals, Inc., by which it would pay F.S. & P. Coal Company, Inc. $5,000 in full and complete settlement of the case. This offer was accepted by F.S. & P. Coal Company, Inc.

Meanwhile, F.S. & P. Coal Company, Inc. had severe financial difficulties. The Internal Revenue Service asserted a lien against the settlement proceeds and judgment creditors of F.S. & P. Coal Company, Inc. also asserted claims by way of suggestion. In order to avoid additional liability, Inter–Mountain Coals, Inc. made a motion for interpleader to bring in these other parties. A hearing was held on 9 February 1983 at which Inter–Mountain Coals, Inc. offered to pay the five thousand dollars in settlement proceeds to its creditors.

At the interpleader hearing the following parties were represented by counsel: F.S. & P. Coal Company, Inc.; Inter–Mountain Coals, Inc.; Independent Explosives, Inc.; George R. Minner and Elsie Louise Minner; and, the Internal Revenue Service. Counsel for Inter-Mountain Coals, Inc. and F.S. & P Coal Company, Inc. stated clearly on the record that the parties had settled their dispute. There was no dispute or disagreement about settlement *per se*. The only question before the Court was who was entitled to the proceeds of the settlement. Both Independent Explosives, Inc. and Mr. and Mrs. Minner claimed liens by virtue of judgments against F.S. & P. Coal Company, Inc. The Internal Revenue Service had given its standard notice of lien. Mr. Tully, counsel for F.S. & P. Coal Company, Inc., claimed a lien for attorney's fees that amounted to fifty percent of the settlement proceeds. The court took the question of the priority of liens under advisement, including the question of the reasonableness of the attorney's fee.

This matter was under consideration by the court from the time of the creditors' hearing until 17 June 1985, when the court rendered a decision. The court ruled that based on the priority of liens, the settlement should be paid to the Internal Revenue Service after Mr. Tully was paid his attorney's fee. The court ruled that the $5,000 settlement agreement was binding, but that Mr. Tully's fifty percent contingent fee was "excessive." The court then reduced Mr. Tully's fee to 33⅓ percent or $1,660.00. Because of this decision, F.S. & P. Coal Company, Inc. declined to agree to an order memorializing the court's decision and, instead, filed a motion to schedule the matter for trial. In response to this motion, Inter–Mountain Coals, Inc. filed a motion to compel entry of an order confirming the settlement.

A hearing was held on the motion to schedule the matter for trial and the motion to enter Inter–Mountain's proposed order on 12 November 1985. At this hearing the court ruled that the parties had settled their dispute and that F.S. & P. Coal Company, Inc. was now bound to accept the $5,000 settlement. The court then entered a final order.

Following the entry of the court's order of 12 November 1985, F.S. & P. Coal Company, Inc. moved to reconsider. Inter–Mountain Coals, Inc. paid into court the $5,000 and moved for an order dismissing the case. Another hearing was held on 21 February 1986 and the court upheld its earlier ruling approving the settlement between the parties and, because the $5,000 had been paid into court, dismissed the case with prejudice.

On appeal to this court, appellant asserts that the circuit court erred in holding that the parties had entered into a binding settlement agreement and that the court erred in summarily reducing the attorney's fee. Appellant requests that the court's order dismissing the case be vacated, the fifty percent contingent fee be reinstated, and the appellant be awarded interest on the amount of the proceeds from the time of the settlement agreement until the money was tendered. After reviewing the record we affirm.

## I

■ There is no evidence in the record to contradict the circuit court's ruling that the compromise and settlement agreement entered into by the parties was a valid and binding contract of settlement. The compromise was entered into after both sides had an opportunity to conduct discovery and was fairly made between competent parties through their respective counsel. The settlement does not contravene any law or any public policy. In fact, public policy favors enforcing settlements. "The law favors and encourages the resolution of controversies by contracts of compromise and settlements rather than by litigation and it is the policy of the law to uphold such contracts if they are fairly made and not in contravention of some law or public policy." Syl.Pt. 2, *Sanders v. Roselawn Memorial Garden, Inc.*, 152 W.Va. 91, 159 S.E.2d 784 (1968); *State ex rel. Vapor Corporation v. Narick*, 173 W.Va. 770, 320 S.E.2d 345 (1984); *Board of Education of Monongalia County v. Starcher*, 176 W.Va. 388, 343 S.E.2d 673 (1986).

■ The appellant contends that the settlement agreement was abrogated by the appellee's failure to make the agreed payment in a timely fashion. However, there is no evidence in the record that this occurred. The letter written by F.S. & P. Coal, Inc.'s attorney, Mr. Tully, accepting the offer of settlement on 20 October 1982 had no conditions precedent concerning when the money was to be paid. Furthermore, the unconditional aspect of the settlement was again confirmed at the interpleader hearing on 9 February 1983. The only issues discussed at that hearing were the priority of liens and the amount of Mr. Tully's fee. Both parties confirmed the settlement on the record.

## II

■ Appellant asserts that the trial court erred in summarily reducing the attorney's fee from 50 percent to 33⅓ percent when the appellant understood in advance the percentage fee and considered the fee deserved. We note, however, that the trial court did not reduce the fee to 33⅓ percent because of fairness to the client; the court was apparently motivated by the objections made by the *creditors*, including the Internal Revenue Service, which thought that the contingency fee was unreasonable.

The appellant asserts that the court had no right to interfere with the private, bargained-for contract between attorney and client that promised fifty percent of the settlement as a fee. Furthermore, the appellant asserts that the Internal Revenue Service had no right to contest the fee agreement between attorney and client. Nonetheless, we find the circuit court had express authority and jurisdiction to set a reasonable fee.

In *Allen v. United States*, 606 F.2d 432, 435 (4th Cir.1979), the Fourth Circuit succinctly restated the general principles of a court's supervisory jurisdiction over contingent fee contracts for services rendered in cases before them:

Because contingency fee agreements are of special concern to the courts and are not to be enforced on the same basis as are ordinary commercial contracts, *Spilker v. Hankin*, 188 F.2d 35, 39 (D.C.Cir.1951), courts have the power to monitor such contracts either through rule-making or on an *ad hoc* basis. Canon 13 of the Canons of Professional Ethics, promulgated by the American Bar Association, recognizes that the attorney is free to enter into such arrangements. The Canon, however, qualifies the right with the proviso that they are subject to the "supervision of the courts, as to their reasonableness." *See Fitzgerald v. Freeman*, 409 F.2d 427 (7th Cir.1969), *cert denied*, 396 U.S. 875 [90 S.Ct. 151, 24 L.Ed.2d 134] (1969) (court not bound by contingent fee agreement executed in conjunction with substitution of new counsel and could, in light of Canons 13 and 34 award fees on a quantum meruit basis). We indicated the source of the power in *Schlesinger v. Teitelbaum*, 475 F.2d 137, 141 (3rd Cir.1973), *cert denied*, 414 U.S. 1111 [94 S.Ct. 840, 38 L.Ed.2d 738] (1973), where we stated that "in its supervisory power over the members of its bar, a court has jurisdiction of certain activities of [its] members, including the charges of contingent fees."

*See also, In re Crouse*, 273 F.Supp. 642, 645 (S.D.W.Va.1965), *affirmed* 383 F.2d 405 (4th Cir.1967) *cert denied* 389 U.S. 1036, 88 S.Ct. 769, 19 L.Ed.2d 824 (1968); *Garrett v. McRee*, 201 F.2d 250, 253 (10th Cir.Okl.1953) *See generally* F. MacKinnon, Contingent Fees for Legal Services 23–24, 44–45 (1964); *ABA Code of Professional Responsibility* EC 2–19 and 20, DR 2–106.

In West Virginia we have followed the federal courts in recognizing the inherent supervisory power of the judiciary. In Syl. Pt. 3 of *Shields v. Romine*, 122 W.Va. 639, 13 S.E.2d 16 (1940) this court held: "A court has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction." *See also, Virginia Electric & Power Co. v. Haden*, 157 W.Va. 298, 200 S.E.2d 848, 853 (1973) *cert denied* 416 U.S. 916, 94 S.Ct. 1624, 40 L.Ed.2d 118 (1974); Syl.Pt. 2, *Frazee v. Lumber Co. v. Haden*, 156 W.Va. 844, 197 S.E.2d 634 (1973).[1]

█ Therefore, we see no error when a circuit court imposes a reasonable contingency fee when the real parties in interest did not agree to the contract fee. Associated with a court's power to allocate part of the recovery to counsel is its obligation to limit the fee to a reasonable amount. *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir.1978) *cert denied* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978); *Evans v. Sheraton Park Hotel*, 503 F.2d 177, 187–188 (D.C.Cir.1974). Under the *ABA Code of Professional Responsibility*, adopted and promulgated by this Court on 9 June 1970, Disciplinary Rule 2–106(B) asserts, "A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction *that the fee is in excess of a reasonable fee.*" [Emphasis added]. These factors seem to apply even when the fee request is based on a private fee agreement; however, in the case before us we need not reach that issue. In this case the lawyer was, for all intents and purposes, working for the creditors who had no opportunity to negotiate a fee. When this case was filed, the client who retained Mr. Tully had no equitable interest in the proceeds of the suit; all proceeds were destined to be paid to third party lienholders. *See Kiser v. Huge*, 517 F.2d 1237, 1254–1255 (D.C.Cir.1974), *adopted en banc*, 171 U.S.App.D.C. 1, 17, 517 F.2d 1275, 1291 (D.C.Cir.1975); *Cappel v. Adams*, 434 F.2d 1278, 1279–1280 (5th Cir.1970).

1. The concept of the inherent power of the judiciary is widely recognized in this jurisdiction. *See Daily Gazette Co., Inc. v. Canady*, 175 W.Va. 249, 332 S.E.2d 262, 264 (1985) for a comprehensive review of the scope of inherent judicial power in this state.

**194**

All court-ordered fee awards must be reasonable fees in accordance with the standard set out in the *ABA Code of Professional Responsibility*, DR 2–106(B). This standard was illuminated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974). In reaching its determination of reasonable fees, a court must consider a number of factors:

(1) the time and labor required in the case; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the necessary legal services; (4) the preclusions of other employment by the lawyer due to acceptance of the case; (5) the customary fee for similar work; (6) the contingency of a fee; (7) the time pressures imposed in the case; (8) the award involved and the results obtained; (9) the experience, reputation, and ability of the lawyer; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship between the lawyer and the client; and (12) the fee awards made in similar cases.

488 F.2d at 717–719. *See also, Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir.1978) *cert denied* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978).

Clearly, the circuit court in the present case made findings of fact to support its decision. There were more creditors than F.S. & P. Coal Company, Inc. could afford to pay. Some creditors did not receive any money from the settlement. The debt of F.S. & P. Coal Company and the difficulties and risks of the case were examined by the court. Because of this, the court reduced Mr. Tully's fee to 33⅓ percent—the going rate for contingency fee awards in Nicholas County. The court made this reduction in fee by applying all relevant criteria outlined in *Johnson v. Georgia Highway Express, Inc., supra* and *Allen v. United States, supra.* Therefore, the judgment of the circuit court is affirmed.

Affirmed.