392 S.E.2d 511

**Dr. Sriramloo KESARI, etc.**

v.

**John SIMON, d/b/a Hilltop Industries, and United States Fidelity & Guaranty Company, etc.**

v.

**J.L. BOWLING ROOFING & SHEET METAL COMPANY, INC.**

**No. 19011.**

Supreme Court of Appeals of West Virginia.

April 12, 1990.

William E. Mohler, Charleston, for J.L. Bowling Roofing & Sheet Metal Co., Inc.

Gregory E. Elliott, Hanna & Elliott, Charleston, for John Simon d/b/a Hilltop Industries, etc.

BROTHERTON, Justice:

The appellant, J.L. Bowling Roofing & Sheet Metal Company, Inc., appeals from the May 12, 1988, order of the Circuit Court of Boone County, which overruled the appellant's motion to set aside a $30,-000 jury verdict rendered against the appellant and in favor of the appellee, John Simon, d/b/a Hilltop Industries.

Dr. Sriramloo Kesari and Kesari M.D., Inc., d/b/a RAM Diagnostic Center, the original plaintiffs, initially filed suit against John Simon, d/b/a Hilltop Industries, and United States Fidelity & Guaranty Company (USF & G), seeking damages for breach of contract in connection with a June 22, 1983, contract between Kesari and Simon for the construction of an office building located in Madison, West Virginia, in which Dr. Kesari intended to operate a medical clinic. John Simon was the general contractor and construction manager of the entire building project.[1]

On June 22, 1983, Dr. Kesari entered into a separate contract with the appellant, J.L. Bowling, to perform roofing and below-grade waterproofing work on the medical building under the appellee's supervision. Dr. Kesari subsequently assigned this contract to the appellee, the contractor John Simon.[2] Under the terms of their respective contracts, Dr. Kesari was to pay Simon $104,706 and J.L. Bowling $8,824.

On April 2, 1985, the appellee, John Simon, filed an answer to Dr. Kesari's complaint which included a cross-claim against the original plaintiffs and a third-party claim against the appellant, J.L. Bowling, individually, which stated that: "If the plaintiff obtains a judgment against the defendant herein, then this defendant further prays for indemnification, contribution and judgment against J.L. Bowling...."

The appellant, J.L. Bowling, filed a motion to dismiss on April 25, 1985, contending that, individually, he was not a proper third-party defendant, and thus the wrong entity was being sued. On September 26, 1985, the appellee moved for leave to file an amended complaint against the third-party defendant, explaining that J.L. Bowling was mistakenly identified as a sole proprietorship and the complaint should be properly styled "J.L. Bowling Roofing & Sheet Metal Company, Inc."[3]

---

1. Dr. Kesari also employed an architectural firm, Tennant & Cummings, to supervise the construction and assure that the project proceeded according to plans and specifications.

2. In the General Conditions of the Contract for Construction, Article 5.1.1 defines a subcontractor as "a person or entity who has a direct contract with the Contractor (or whose contract is assigned to the Contractor) to perform any of the work at the site ... The term Subcontractor does not include any separate contractor or his subcontractors."

3. We note, however, that the Standard Form of Agreement Between Owner and Contractor indicates that the contract was between the owner, Dr. Sriramloo Kesari, and the contractor, J.L. Bowling, and not J.L. Bowling Roofing & Sheet Metal Company, Inc.

On October 10, 1985, the appellant appeared specially and moved to dismiss the complaint against him, stating that J.L. Bowling Roofing & Sheet Metal Company was not made a proper third-party defendant. The appellant's motion to dismiss was granted on September 1, 1987. However, at the same time, the appellee's motion to amend the third-party action to name "J.L. Bowling Roofing & Sheet Metal Co., Inc." as the appellant was granted.[4]

Just before the trial was scheduled to begin on November 4, 1987, the appellee and USF & G announced a settlement with the original plaintiffs, Dr. Kesari and RAM Diagnostic Center, which was detailed in a judgment order entered on November 16, 1987. Under the terms of the settlement, the appellee confessed judgment for $37,-500. USF & G paid $35,000 to the plaintiffs, while the plaintiffs kept $2,500 that the appellee maintained they owed to him. The appellee and his wife, Leona Simon, executed a promissory note in which they agreed to pay $32,500 to USF & G. In the order, Dr. Kesari also assigned "all rights, title, and interest" in any claim he may have had against the appellant, J.L. Bowling Roofing & Sheet Metal Company, to the appellee and his wife.

On November 13, 1987, the appellee filed a second amended third-party complaint which recited the terms of the settlement and sought a $37,500 judgment against the appellant. The parties proceeded to trial on this complaint on February 9, 1988. The following day, the jury returned a $30,-000 verdict for the appellee, John Simon.[5] A motion to set aside the verdict was denied by the court in an order entered on May 12, 1988. The appellant now appeals from this May 12, 1988, order.

On appeal, the appellant's first assignment of error involves the issue of whether he was properly made a third-party defendant in this action and whether the appellee's second amended third-party complaint

was properly filed. On September 26, 1985, the appellee moved to file an amended complaint against "Third–Party Defendant, J.L. Bowling, for the reason that J.L. Bowling was mistakenly identified as a sole proprietorship...."

There was no further activity in this case for almost two years. According to the appellant, it was brought to the court's attention during a pre-trial conference that the appellant had not properly been made a defendant in the case. On September 1, 1987, the lower court granted the appellee's motion to amend the third-party action and name "J.L. Bowling Roofing & Sheet Metal Company, Inc." as a third-party defendant. The appellant's motion was also granted and individually, J.L. Bowling was dismissed as a defendant. The appellant now argues that it was error for the court to enter an order granting the appellee's motion to amend, noting that a third party summons was never issued nor served upon the appellant. The appellant contends that he was never properly made a third-party defendant, and thus his October 10, 1985, motion to dismiss should have been granted.

■ Contrary to the appellant's assertions, however, we do not agree that the trial court abused its discretion when it permitted the appellee to amend his third-party complaint and name "J.L. Bowling Roofing & Sheet Metal Co., Inc." as the third-party defendant, rather than J.L. Bowling, individually. Rule 15 of the West Virginia Rules of Civil Procedure provides that leave of the court to amend a pleading "shall be freely given when justice so requires."

Certainly, in this case the appellant cannot cry foul, or claim surprise and an inability to adequately prepare a defense, simply because the trial court allowed the appellee to amend his complaint to properly name the appellant. Given the circum-

---

4. On September 1, 1987, USF & G also filed an amended answer which included the appellee's wife, Leona Simon, in the third-party complaint.

5. Much of the testimony presented at trial centered around the process involved in applying

the waterproofing material which, in this instance, was "Trocol 48," described by one expert as "a polyvinylchloride, a plastic sheet ... forty-eight thousandths of an inch thick."

stances, the amendment was more technical than substantive. The appellant was well aware that the appellee intended to seek reparations from either him or his company and had simply mistakenly identified the proper party. Indeed, upon the appellee's filing of the third-party claim against him, the appellant almost immediately made a motion to dismiss the suit because it was filed against him as an individual rather than the corporate entity. When the appellee realized his mistake, he moved the court for leave to file an amended complaint, while the appellant again moved for a dismissal. As we noted above, however, for whatever reason, there were no rulings on these motions. It was not until pre-trial proceedings were held on September 1, 1987, that the issue was again raised and, at that time, the trial court allowed the appellee to amend his complaint.

The November 4, 1987, order, which explained the terms of the subsequent settlement between the original plaintiff, Dr. Kesari, and the appellee, John Simon, provided that the appellee's action against J.L. Bowling Roofing & Sheet Metal Co., Inc. would remain pending. Further, the appellee Simon and his wife were granted leave to amend their third-party complaint against J.L. Bowling Roofing & Sheet Metal Co., Inc. "to assert such additional causes of action as they desire."[6]

■ The appellant now objects to the terms of the order and states that new causes of action were filed by the appellee without leave of court. However, we find that the appellee's amended third-party complaint merely recited the terms of his settlement of the claims made against him by the original plaintiff, Dr. Kesari. The appellee, in turn, sought a $37,500 judgment against the appellant, J.L. Bowling Roofing & Sheet Metal Co., Inc. because, according to the amended complaint, the appellant "breached its duty of good workmanship and the supplying of a quality product free from defects, all of the same

being the basis of the initial complaint filed herein."

We find no evidence in the record indicating that new causes of action were improperly asserted by the appellee. Rather, the appellee simply did what he indicated in his original answer he would do if Dr. Kesari obtained a judgment against him, which was to seek a judgment against J.L. Bowling Roofing & Sheet Metal Co., Inc., the subcontractor responsible for the waterproofing work.

This Court has stated that Rules 1 and 61 of the West Virginia Rules of Civil Procedure "make clear our intent to avoid placing form over substance in the procedures of our courts." *Talkington v. Barnhart*, 164 W.Va. 488, 264 S.E.2d 450, 453 (1980). There is no evidence that the appellant was prejudiced by the lower court's pre-trial procedures. Because the appellant had notice of the claim against him, we find no prejudice resulting from the amended complaint and, thus, we find no reversible error.

In his second assignment of error, the appellant argues that the appellee's settlement of Dr. Kesari's claim against him without trial precludes the appellee from prosecuting his own third-party action against the appellant. The appellant cites no cases to support his argument, but contends that Rule 13 of the West Virginia Rules of Civil Procedure does not permit the filing of an entirely new suit or cause of action under the guise of an amendment. As we have explained, however, we do not find that this is, in fact, what the appellee did in this case.

■ As the appellee points out, it is the policy of this State to encourage settlements. " 'The law favors and encourages the resolution of controversies by contracts of compromise and settlements rather than by litigation and it is the policy of the law to uphold such contracts if they are fairly made and not in contravention of some law

---

**6.** The appellant claims that he was not privy to the settlement negotiations and further, that no showing was made that the settlement was fair and reasonable. However, the appellee maintains that both the appellant and his counsel were present and that they declined Judge Cook's invitation to participate and help to effectuate a settlement.

or public policy.' Syl. Pt. 2, *Sanders v. Roselawn Memorial Gardens, Inc.,* 152 W.Va. 91, 159 S.E.2d 784 (1968)." Syl. pt. 1, *F.S. & P. Coal Co. v. Inter–Mountain Coals, Inc.,* 179 W.Va. 190, 366 S.E.2d 638 (1988). Relevant to the question now before us is Rule 54(b) of the West Virginia Rules of Civil Procedure, which states, in pertinent part:

(b) *Judgment upon multiple claims or involving multiple parties.*—When more than one claim for relief is presented in an action, whether as a claim, *counterclaim,* cross-claim, or *third-party claim,* or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties *only* upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, *any order* or other form of decision, *however designated,* which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties *shall not terminate the action as to any of the claims or parties,* and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. (Emphasis added.)

In this case, the appellee's settlement with the original plaintiff, Dr. Kesari, resulted in the November 16, 1987, judgment order, which set forth the terms of that settlement. However, as Rule 54(b) explains, this order did not "terminate the action as to any of the claims or parties" because it applied to fewer than all the parties. Rather, the order specifically provided that the appellee's action against J.L. Bowling Roofing & Sheet Metal Co., Inc. would remain pending. In fact, as Rule 54(b) states, "the order or any other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and all the rights and liabilities of all the parties." Thus, we conclude that the appellee's settlement of Dr. Kesari's claim against him for $37,500 did not preclude the appellee from proceeding with his own claim for indemnification from the appellant, a claim which, in this case, resulted in a $30,000 jury verdict for the appellee.

■ The appellant next argues that the appellee is estopped from making a claim against the appellant because the appellee approved and accepted the appellant's work. However, in this case, the defects were not easily detectable. Although testimony at trial indicated there were concerns about leakage problems prior to the completion of the building, when J.L. Bowling's bill was submitted, John Simon and Dr. Kesari's architect approved payment on October 30, 1983. Certificates of Substantial Completion were also issued, again signed by Simon and the architect. Dr. Kesari testified that it was not until five months later, when he began to occupy the building in March, 1984, that the leaks began on "all the walls, three walls, wall sides, and in the front."

In essence, Dr. Kesari's claim against the contractor Simon was that when the backfilling work was performed, the dirt contained rocks which were placed up against the membrane of the walls and punched holes in the membrane, thus resulting in the leaks. Any defects in the below-grade waterproofing process or damages to the walls as a result of the backfilling process were not visible to the naked eye when the Certificate of Completion was signed. Thus, we follow the rule, also discussed at syllabus point 4 of *Steinbrecher v. Jones,* 151 W.Va. 462, 153 S.E.2d 295 (1967), at syllabus point 2, which provides that "damages may be recovered for concealed defects which could not have been discovered by due diligence even after the owner (or his agent) have accepted the completed construction and approved of all work as having been done in a workmanlike manner." *Trenton Const. Co. v. Straub,* 172 W.Va. 734, 310 S.E.2d 496, 499 (1983).

■ Another question raised by the appellant is whether the damages awarded to the appellee should be limited to 50% because the plaintiff, Dr. Kesari, assigned his cause of action to the appellee and his wife

equally. The appellant contributes little in the form of discussion of this argument, and he cites no case law in support of this contention. However, the appellee argues that his damage award should not be reduced because he had received a prior assignment of the appellant's contract by the owner and, therefore, the post-settlement assignment of any of the owner's rights was merely cumulative.

We agree with the appellee that Dr. Kesari's post-settlement assignment of his rights against the appellant was unnecessary. Whether Dr. Kesari actually had any rights against the appellant (the subcontractor, J.L. Bowling Roofing & Sheet Metal Co., Inc.) at this point is questionable. However, the appellee's right to seek indemnification from the appellant is the result of their contractor-subcontractor relationship, which was established prior to and unaffected by the second, post-settlement assignment.

■ The appellant also questions whether the appellee sustained proper proof of damages at trial. The appellant argues that the settlement figure of $37,500 made no allocation of amounts for specific defects in the building[7] and, therefore, it was error to submit the question of damages to the jury. The appellant contends that the lower court should have directed a verdict in his favor and, for that reason, this Court should now set aside the jury verdict, reverse the judgment, and enter judgment for the appellant, or, in the alternative, remand this case to the Circuit Court of Boone County for a new trial.

The appellee maintains that he met his burden of proof on the issue of damages, as determined by the jury, and he disputes the appellant's claim that the only evidence in the record to support a damage claim was Dr. Kesari's testimony that he had a $10,000 contract for labor to do corrective work.[8] For example, the appellee's expert, a consultant engineer, Robert L. Wolfe, testified that it would cost $44,450 to re-excavate, remove the old waterproofing products, and re-waterproof the building. On cross-examination, Mr. Wolfe stated that he reviewed another estimate in the $60,000 range. Additionally, the man who performed the original excavation and backfill work, Elmer Walker, an excavating contractor, testified that he would charge between $24,000 and $28,000 to re-excavate and backfill the property once again.[9] Dr. Kesari testified that he had received estimates ranging from $60,000 to $68,000 to re-excavate, backfill and reapply the waterproofing.

In syllabus point 2 of *Trenton Const. Co., Inc. v. Straub*, 172 W.Va. 734, 310 S.E.2d 496 (1983), this Court stated that, " '[T]he proper measure of damages in ... cases involving building contracts is the cost of repairing the defects or completing the work and placing the construction in the condition it should have been if proper-

7. In the original complaint filed against the contractor, John Simon, Dr. Kesari sought damages for many alleged defects in the building. In addition to the waterproofing, there were problems associated with the carpeting, tile, and bathroom fixtures. At trial, Dr. Kesari explained his decision to settle with the appellant Simon for $37,500 by stating that he considered the other problems to be minor in comparison to the waterproofing problem ("... because I can live with the other things. That's why I settled.")

8. The appellee states that this work was only a part of Dr. Kesari's attempt to partially remedy the leakage problems by putting pipe along some walls, and did not involve re-excavating and re-waterproofing. Dr. Kesari testified that he had a contract with someone to perform remedial repairs on the exterior of the building for "around $10,000" (for labor only): "What we're doing is digging outside the building, ten feet of it, and put in some piping, temporarily sealing it to solve the problem, because we can't go close to the building because it might—nobody wants to give me a contract for that. Nobody wants to come and dig close to the building."

9. Walker noted the different circumstances under which re-excavation and backfill would now have to be performed. Specifically, Walker stated that because a structure was now present, extra caution would be required to assure that it was not damaged. Also, an effort would have to be made to determine what was causing or had caused the leak.

ly done under the agreement contained in the building contract.' *Steinbrecher v. Jones,* 151 W.Va. 462, 153 S.E.2d 295, 304 (1967)." We find no error with regard to the damage evidence presented by the appellee at trial and, therefore, we decline to reverse on this point.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Boone County.

Affirmed.