310 S.E.2d 496

**TRENTON CONSTRUCTION CO., INC.**

v.

**Glenn F. STRAUB, etc., et al.**

**No. 15914.**

Supreme Court of Appeals of West Virginia.

Dec. 16, 1983.

Jeremy C. McCamic, McCamic & McCamic, Wheeling, for appellant.

John Marshall, III, Wheeling, for appellees.

PER CURIAM:

This is an appeal from a judgment of the Circuit Court of Ohio County entered in a civil action instituted by the appellant, Trenton Construction Company, Inc., (hereinafter referred to as Trenton), against appellees Glenn and Rebecca Straub, to enforce a mechanic's lien. The lien was based upon certain work performed by Trenton in the construction of the Straubs' home. The Straubs defended the action upon the grounds that the company's work had not been performed in a good and workmanlike manner in the time period agreed upon, and the company had not complied with certain terms and conditions of the contract. In a counterclaim, the Straubs sought damages for breach of contract.

The case was tried without a jury and at the conclusion of the evidence the trial court found that Trenton was entitled to recover $4,619 for the original contract price and extras, and the Straubs were entitled to receive $8,500 from Trenton because of the company's failure to install a moisture barrier in the home as required. Deducting one award from the other, the

court concluded that the Straubs were entitled to receive $3,881 and entered judgment for that amount in their favor.

The evidence at trial was limited to two major issues: (1) the amount Trenton was to be paid for the work performed; and (2) whether the absence of a moisture barrier led to the moisture problem in the Straub home.

The record indicates that there was no written contract between Trenton and the Straubs. There was, however, a written proposal submitted by Trenton which stated that the approximate price of the work would be $53,000. That same proposal stated:

"This price includes rough frameing (sic), celetox, roof blacked in only. Block, slab insulation, urathane in finish walls, concrete footers and floors only. Gravel under floors and visqueen vapor barrier. Tin roof add $3,000.00. No stucco. Also includes laying approx 120 ton split rock."

On the basis of this proposal and the testimony adduced, the court found that the contract price was $53,000 and that Trenton was entitled to receive that amount plus $1,619 for extras which Mr. Straub admitted in his testimony was due. The appellants do not take issue with the court's ruling on this point.

Therefore, the only issue involved in this appeal is whether the court erred in finding that Trenton had a duty to provide a visqueen vapor barrier under certain portions of the house and whether the failure to provide that barrier was the principal cause of the Straubs' moisture problem in their home. The appellants also argue that the measure of damages applied by the court was incorrect.

The evidence at trial showed that Mr. and Mrs. Straub hired an architect, Harry Keagler, to draw the plans and specifications for their new home and supervise its construction insofar as any conflicts arose between the construction and the plans. Mr. Keagler testified that his original drawings upon which bids were submitted showed a vapor barrier under the concrete floors of the home. Although the plans did not specifically call for visqueen (plastic) Mr. Keagler testified that "commonly what we use normally would be visqueen of a certain mil thickness. It's a common construction practice I believe at least since I've been familiar with it." Mr. Keagler prepared a second set of drawings to clarify certain elements of the first set. The second drawings again provided for a moisture barrier beneath the concrete slab of the home.

There was sufficient evidence at trial to support the court's ruling that no visqueen vapor barrier was installed under the greater portion of the floors in the home. Mr. Straub testified that core drillings were done throughout the house and no plastic visqueen was found. Harold Kercher, a structural engineer, testified that he observed the core drillings and that there was adequate gravel beneath the concrete but he saw no evidence of a membrane or plastic the purpose of which would be to "make the final break point so that the moisture cannot have access to the bottom of the concrete." He testified that common practice would dictate, even if absent from the specifications, that, "[w]hen you're pouring the slab on ground the basic procedure usually a subbase, vapor barrier and your concrete."

Kermit Trenton, President of Trenton Construction Company, Inc., testified that in his view the written proposal submitted by his company did not require visqueen throughout the house. He could not recall whether it had been placed under the floor in the living room but stated that visqueen was used in the bedroom addition to the home. Mr. Trenton was of the opinion that the gravel he placed beneath the floors acted as a vapor barrier of its own.

In addition to this evidence, Mr. Straub testified extensively about the moisture problem in his home and about the unsuccessful corrective measures he and his wife had taken to eliminate the problem.

On the basis of this evidence, the trial court made the following findings of fact:

"Plaintiff's Exhibit 2 [bid proposal] also included 'gravel under floors and Visqueen barrier'. Since this was specif-

ically provided for in said Exhibit, the terms of which the Court finds the Defendants accepted by virtue of their permitting the Plaintiff to proceed (sic) construction, the Court finds that the Plaintiff had a duty to provide the same throughout the house in accordance with good practice and usage in construction of dwellings on a slab; this provision should have superceded any lack in the plans and specifications provided for the construction by someone other than the Plaintiff."

"There is a moisture problem in the Defendants' dwelling caused for the most part by the lack of a visqueen vapor barrier under the greater portion of the floors. At least two holes were drilled in the floor of the house to see what material was in the floor; no vapor barrier was present."

■ After reviewing the record in this case, we are of the opinion that the evidence supports the court's findings and that the court's decision should not be disturbed on appeal. In syllabus point 8 of *Sanders v. Roselawn Memorial Gardens, Inc.*, 152 W.Va. 91, 159 S.E.2d 784 (1968), we said:

"A finding of fact made by a trial chancellor or by a trial court sitting in lieu of a jury will be given the same weight as the verdict of a jury and will not be disturbed by this Court on appeal unless the evidence plainly and decidedly preponderates against such finding."

The appellant points out that the architect for the Straubs' home, Harry Keagler, gave the company a letter of completion which stated in part:

"Based upon my visits to the above mentioned project, I would determine that your work generally has been completed in a workmanlike manner in accordance with plans prepared by this office. A final inspection and review have not taked (sic) place to date and it may be determined at such time that minor corrections to the work will have to be made."

The appellant argues that the architect is the agent of the owners, Mr. and Mrs. Straub, and that when he released Trenton by the letter of completion, he bound the Straubs to that release. Appellant contends that no damages can be recovered for work which was certified properly completed.

■ The record indicates that the defect in this case, i.e., the absence of a vapor barrier, was not discovered until at least a year after construction was completed on the home. This is a defect which could not have been easily discovered by a view of the premises. It was in fact discovered only when Mr. Straub removed a portion of the bathroom floor to relocate fixtures in that room. The law in this State provides that damages may be recovered for concealed defects which could not have been discovered by due diligence even after the owner (or his agent) have accepted the completed construction and approved of all work as having been done in a workmanlike manner. *Steinbrecher v. Jones*, 151 W.Va. 462, 474, 153 S.E.2d 295, 303 (1967).

■ The only other issue in this case is the measure of damages to be applied to correcting the moisture problem. In *Steinbrecher v. Jones, supra*, we stated:

"As a general rule, the proper measure of damages in such cases involving building contracts is the cost of repairing the defects or completing the work and placing the construction in the condition it should have been in if properly done under the agreement contained in the building contract." 151 W.Va. at 476, 153 S.E.2d at 304.

We also stated the alternate rule in some states that the measure of damages is the difference in value between what is built and what was supposed to have been built. The Court noted that this rule is sometimes applied where extensive reconstruction is necessary at a cost grossly disproportionate to the value of the structure.

■ The alternate rule is not involved under the facts presented at trial in the case before us. Mr. Straub testified that the value of his house had risen from $100,000 in 1974 when it was constructed to $200,000 at the time of the trial. The trial

**738**

court found that the cost of adding the visqueen vapor barrier was $8,500. This cost is clearly not disproportionate to the value of the Straubs' home and the trial court was correct in applying the cost of repair rule.

Accordingly, the judgment of the Circuit Court of Ohio County is affirmed.

Affirmed.

MILLER, J., deeming himself disqualified, did not participate in the consideration or decision of this case.