558 S.E.2d 611

Delmar TAYLOR and Helen Taylor,
Plaintiffs Below, Appellants,

v.

ELKINS HOME SHOW, INC., a West Virginia Corporation, and United Contracting Incorporated, a West Virginia Corporation, Defendants Below, Appellees.

No. 28891.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 18, 2001.

Decided Oct. 30, 2001.

Dissenting Opinion of Chief Justice
McGraw Jan. 11, 2002.

Frank P. Bush, Jr., Esq., Bush & Bush, Elkins, for the Taylors.

Stephen Godfrey Jory, Esq., Jessica M. Baker, Esq., Jory & Smith, Elkins, for Elkins Home Show.

MAYNARD, Justice.

Delmar and Helen Taylor, the appellants and plaintiffs below, appeal the August 1, 2000 order of the Circuit Court of Randolph County which granted post-verdict judgment as a matter of law on behalf of the appellee and defendant below, Elkins Home Show. The Taylors raise several issues on appeal to this Court. After careful consideration of these issues, we affirm the judgment of the circuit court.

## I.

### FACTS

Delmar and Helen Taylor purchased a double-wide mobile home from Elkins Home Show for $55,569.35. This price included installation, the laying of a concrete footer, and construction of a non-weight-bearing perimeter block wall around the bottom of the home. Defendant below, United Contracting, Inc., was hired by Elkins Home Show to install the home.[1]

■ After moving into their new home, the Taylors complained to Elkins Home Show about several alleged defects in both the interior and foundation of the home.[2] On May 22, 1998, the Taylors sued Elkins Home

---

1. Specifically, United Contracting installed the footers and transported the house. Real Rock Stone and Masonry was hired by United Contracting to install the perimeter block wall. Real Rock Stone and Masonry was not a party below.

2. The Taylors also filed a complaint with the State Director of Manufactured Housing. The Director issued a citation against United Con-

tracting after it found that the footer of the Taylors' house was not laid deep enough. Evidence was admitted at trial that Mr. Taylor was responsible for moving a portion of the top soil off of the footer, and the Director testified that she would not have issued a citation against United Contracting had she known that the violation was Mr. Taylor's fault.

Show and United Contracting alleging breach of express and implied warranties and violation of the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*[3] Specifically, the complaint alleged that the footer was not installed below the frost line; the perimeter block wall was cracked; the heating system was inadequate; several doors were not properly aligned; and some roof shingles were loose.

At a two-day trial on August 17 and 18, 1999, the Taylors testified of various problems with their home. They also presented the testimony of Leff Moore, Executive Director of the West Virginia Manufactured Housing Association, a private, nonprofit group, who testified of various defects in the home's interior. He testified further, however, that all of these defects, except one, were the responsibility of the manufacturer, not the retailer. The one problem which he deemed the responsibility of Elkins Home Show, concerned an overlapping carpet seam. However, he was prevented by the circuit court from giving an estimate of the cost of repair of the seam because the estimate was not earlier disclosed to Elkins Home Show. The Taylors also presented the testimony of E.J. Merritt, a general contractor, who testified that he gave Mr. Taylor an estimate of $26,907.00 for completely replacing the footers and perimeter block wall.

At the close of the Taylors' case, United Contracting and Elkins Home Show moved for judgment as a matter of law, and the circuit court took the motions under advisement. The defendants then put on evidence that Mr. Taylor caused the footer's inadequate depth by removing dirt off the top of the footer in order to smooth the land and provide greater crawl space under the house. The defendants also presented evidence that Mr. Taylor cracked the perimeter block wall with the bucket of his backhoe while installing a drain.

The defendants renewed their motions for judgment as a matter of law at the close of all of the evidence. The motions again were taken under advisement by the circuit court. Also, at this time, the circuit court granted the defendants' motion to exclude Mr. Merritt's written repair estimate because of its speculative nature. In addition, due to the insufficiency of the evidence on the alleged interior defects, the parties agreed to exclude these items from the verdict form, and to include only alleged damage to the footers, piers, perimeter block work, as well as annoyance and inconvenience damages. The jury returned a verdict in favor of United Contracting, and it is not a party on appeal.[4] However, the jury found that Elkins Home Show violated express and implied warranties made to the plaintiffs, and also failed to make repairs to defects in the home after repeated demands.[5] The jury awarded damages of $4,000 for the perimeter block wall and aggravation and inconvenience damages of $14,142.00

On August 23, 1999, Elkins Home Show filed a renewed motion for judgment as a matter of law. The jury verdict order was entered on September 3, 1999. On October 20, 1999, the circuit court denied Elkins Home Show's motion for judgment as a matter of law but granted a new trial on the sole issue of the block wall. On November 3, 1999, Elkins Home Show filed a W.Va.R.C.P. Rule 60(b)(6) motion for reconsideration in which it argued, *inter alia*, that the circuit court failed to specify grounds for a new trial, improperly awarded a new trial where none of the parties had moved for a new

---

3. The central purpose of the Magnuson–Moss Warranty Act is to provide a more effective mechanism for consumer claims involving comparatively small amounts of damages. *See In Re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 155 F.Supp.2d 1069 (S.D.Ind.2001).

4. On November 2, 1999, the circuit court entered a judgment order which dismissed United Contracting with prejudice on the merits.

5. Because the alleged interior defects were not included on the verdict form, the fact that the verdict form permitted the jury to find that Elkins Home Show failed to make repairs to defects in the home after repeated demands is inexplicable. This is especially so in light of the fact that the circuit court instructed the jury that "the Plaintiffs' claims against the Defendants, United Contracting and Elkins Home Show, are limited to claims of breach of implied warranty concerning the footers and block skirting installed at the residence. As such, those are the only claims that you can consider against the Defendants."

trial, and failed to address the sufficiency of the Taylors' case-in-chief. At a November 29, 1999 hearing, Elkins Home Show's motion for reconsideration was taken under advisement. On May 24, 2000, Elkins Home Show filed its second renewed motion for judgment as a matter of law. On August 1, 2000, the circuit court granted Elkins Home Show's second renewed motion for judgment as a matter of law. The Taylors now appeal this order.

## II.

### STANDARD OF REVIEW

When this Court reviews a circuit court's grant of post-verdict judgment as a matter of law, we are mindful that,

> In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

Syllabus Point 5, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983). Concerning our standard of reviewing a circuit court's grant of post-verdict judgment as a matter of law, we recently stated:

> We apply a *de novo* standard of review to the grant … of a … post-verdict motion for judgment as a matter of law. After considering the evidence in the light most favorable to the nonmovant party, we will

sustain the granting or denial of a … post-verdict motion for judgment as a matter of law when only one reasonable conclusion as to the verdict can be reached.

*Gillingham v. Stephenson*, 209 W.Va. 741, 745, 551 S.E.2d 663, 667 (2001) (citation omitted). We now proceed to consider the Taylors' arguments with the above standard as our guide.

## III.

### DISCUSSION

#### A. *Propriety of Second Renewed Motion for Judgment as a Matter of Law*

First, the Taylors assert that the circuit court was without jurisdiction to grant Elkins Home Show's second renewed motion for judgment as a matter of law which was filed more than eight months after the verdict order was entered. The Taylors argue that Rule 50(b) of the West Virginia Rules of Civil Procedure does not provide for a second renewed motion for judgment as a matter of law more than ten days after entry of judgment.[6] Also, the Taylors assert that there is no provision under the rules of civil procedure for a motion for reconsideration. Finally, they contend that the second renewed motion cannot be considered a Rule 60(b) motion because Rule 60(b) is designed to address mistakes attributable to special circumstances, not erroneous applications of the law. According to the Taylors, the circuit court's August 1, 2000 order, granting judgment as a matter of law, was merely a grant of the same post-trial motion that had already been denied.[7]

> We note also that Elkins Home Show's November 3, 1999 "Motion for Reconsideration" of the circuit court's order granting a new trial was improperly made pursuant to Rule 60(b)(6). By it own terms, Rule 60(b) applies only to motions for relief from "a *final* judgment, order, or proceeding." (Emphasis added.) The circuit court's order denying Elkins Home Show's motion for judgment as a matter of law and granting a new trial was not a final judgment but rather an interlocutory order. These facts, however, do not affect our decision in this case.

---

**6.** There is no dispute that Elkins Home Show's original renewed motion for judgment as a matter of law, filed on August 23, 1999, was timely.

**7.** In its November 3, 1999 motion, Elkins Home Show argued that it was improper for the circuit court to grant a new trial in light of the fact that it did not request a new trial in its motion for judgment as a matter of law. This is incorrect. "The court always has the discretion to order a new trial rather than a judgment as a matter of law, even if the movant sought only a judgment and did not also seek a new trial." 7 James Wm. Moore, *Moore's Manual: Federal Practice Forms*, 22–156 (2001).

■ While the Taylors are correct in asserting that the second renewed motion cannot be considered a Rule 60(b) motion, and that Rule 50(b) does not specifically provide for a second renewed motion for judgment as a matter of law more than ten days after entry of judgment, we do not find these arguments dispositive. This is because at the time Elkins Home Show made its May 24, 2000 motion, *there was no standing judgment order.* Accepting that the September 3, 1999 Jury Verdict order was the entry of judgment, the circuit court subsequently granted a new trial. "An order granting a new trial is interlocutory and destroys the finality of the judgment." *Coleman v. Sopher,* 201 W.Va. 588, 605, 499 S.E.2d 592, 609 (1997), *quoting* 12 James Wm. Moore et al., *Moore's Federal Practice,* § 59.43[1] (3d ed.1997) (citations omitted). Because there was no final judgment at the time Elkins Home Show filed its second renewed motion, the motion could not have been untimely.

■ Further, we reject the Taylors argument that the rules of civil procedure do not provide for a motion for reconsideration under these circumstances. This Court has stated,

"In an ongoing action, a trial judge has the authority to reconsider his or her previous rulings, including an order granting a new trial.... Since [a trial] court has plenary power to reconsider, revise, alter, or amend an interlocutory order, the court has the power to take any action with respect to an order granting a new trial."

*Id.* Therefore, we believe that the circuit court had plenary authority to reconsider its October 20, 1999 order granting a new trial. In light of this authority, Elkins Home Show's May 24, 2000 motion may best be "viewed as a routine request for reconsideration of an interlocutory ... decision.... Such requests do not necessarily fall within any specific ... Rule. They rely on the

inherent power of the rendering ... court to afford such relief from interlocutory judgments ... as justice requires." *State ex rel. Crafton v. Burnside,* 207 W.Va. 74, 77, 528 S.E.2d 768, 771 (2000), *quoting Greene v. Union Mutual Life Ins. Co. of America,* 764 F.2d 19, 22 (1st Cir.1985). We therefore find that the circuit court clearly retained its authority to vacate its order granting a new trial and to grant judgment as a matter of law on behalf of Elkins Home Show.

*B. Alleged Inadequacy of Order Granting Judgment As A Matter Of Law*

Second, the Taylors complain that the circuit court's August 1, 2000 order fails to set forth findings of fact and conclusions of law and is, therefore, inadequate under *Fayette County Nat'l Bank v. Lilly,* 199 W.Va. 349, 484 S.E.2d 232 (1997). Because of this alleged inadequacy, the Taylors contend that the order should be reversed and remanded for the requisite findings. Elkins Home Show responds that the reasons for the circuit court's order are amply set forth in the trial judge's colloquy in the record, and there is no need to reverse and remand.

■ Although the Taylors cite to *Fayette v. Lilly* to support their position, *Lilly* applies specifically to orders granting summary judgment and not to orders granting post-verdict judgments as a matter of law pursuant to Rule 50(b). In addition to *Lilly,* Rule 52 of the West Virginia Rules of Civil Procedure requires findings of fact and conclusions of law in several instances including actions tried upon the facts without a jury or with an advisory jury, the granting or refusal of preliminary injunctions, and partial judgments as a matter of law in trials without a jury.[8] None of these circumstances are present here. Otherwise, Rule 52(a) provides that findings of fact and conclusions of law are unnecessary on decisions of motions.[9] While

---

**8.** In addition, in *P.T.P., IV By P.T.P. v. Board of Educ.,* 200 W.Va. 61, 488 S.E.2d 61 (1997), this Court held that, in addition to summary judgment orders, a circuit court's order granting dismissal should set out factual findings sufficient to permit meaningful appellate review.

**9.** Also, Rule 50(c) of the West Virginia Rules of Civil Procedure provides that if a circuit court

grants a renewed motion for judgment as a matter of law, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter reversed or vacated, *and shall specify the grounds for granting or denying the motion for the new trial.* This rule is not applicable insofar that there was no motion for a new trial pending.

it may be the preferred practice, we do not believe that the circuit court was required under *Lilly* or Rule 52(a) to set forth findings of fact and conclusions of law in its August 1, 2000 order.

■ However, even if Rule 52(a) required findings of fact and conclusions of law in the circuit court's order, we held in Syllabus Point 1 of *Tomkies v. Tomkies*, 158 W.Va. 872, 215 S.E.2d 652 (1975), that "[f]ailure to comply with the requirements of Rule 52(a), W.Va.R.C.P. authorizes the appellate court to make independent factual determinations without resorting to remand where the record contains sufficient dispositive facts for decision." Our review of the record indicates that it contains sufficient dispositive facts for this Court to make independent factual determinations without resort to remand.[10] Accordingly, we find no merit to the Taylors' second assignment or error.

### C. Propriety of Judgment As A Matter Of Law

As their final assignment of error, the Taylors challenge the circuit court's grant of judgment as a matter of law on behalf of Elkins Home Show. The Taylors argue that when viewed in the light most favorable to them, the evidence clearly establishes that the interior of their home contained several defects, they made numerous complaints to Elkins Home Show, and Elkins Home Show failed to repair the defects within a reasonable time. The Taylors assert that this establishes a *prima facie* case under the Magnuson–Moss Act. Concerning the block perimeter wall, the Taylors point to evidence that the block wall contained numerous cracks which permitted drainage water to accumulate under their home. Further, Mr. Merritt estimated that it would cost $2,500.00 to replace the wall. Because Mr. Merritt could not separate the cost of the cement to replace the wall with the cement to replace the footers, the Taylors' conclude that the jury had sufficient evidence to determine that an additional $1,500.00 was a necessary cost to complete the repair of the block wall, bringing the total amount of damages for the block wall to $4000.00.

■ We conclude, first, that the circuit court was correct in granting judgment as a matter of law on the Taylors' Magnuson–Moss Warranty Act claim for defects in the interior of the home. Although the Taylors alleged several defects in the home's interior, they completely failed to adduce evidence either that the alleged defects existed, that

10. The circuit court's continued concern during the trial with the sufficiency of the Taylors' case is clear from the record. Prior to the close of the Taylors' case, the circuit court commented to the Taylors' counsel that "I am quite frankly concerned about the—about your portion of the case. I feel that a person generally should ... be permitted to present their case, but we have a number of deficiencies in your case." At that point, the court took the defendants' motions for judgment as a matter of law under advisement. At the close of the Taylors' case, the circuit court summarized the Taylors' evidence concerning interior defects as follows:

We have nothing on the door frame as far as cost to repair—we have the carpet seam, but we have no cost to repair that. Mr. Moore said that the vinyl in the bathroom was okay. We have the—perhaps crack in the skylight which we don't know when it occurred or even if it exists, but your witness says that it is the responsibility of the manufacturer. But even if it's the responsibility of the retailer we have no cost to repair in this case do we? We have the back door which Mr. Moore says is okay—we have the kitchen floor which your evidence says is the responsibility of the manufacturer,

and even if we did we have no cost to repair that. We have the door knob on the kitchen cabinet which your evidence says is the responsibility of the manufacturer, and even if we hold the retailer to that we have no cost to repair. We have the duct system which your evidence says is the ... responsibility of the manufacturer, and even if we hold the retailer there's no cost to repair or do anything or certify or anything else.

We have the footings which your evidence says ... was caused by the Plaintiff to begin with and also which your evidence says can be repaired by putting dirt over it which the Defendants offered to do, and which your evidence says you refused to do—or your clients refused to do. Why should I let this case go to the Jury? Aren't we just playing with the lottery?

Later in the trial, the court characterized the case as "a mess." Finally, prior to submitting the case to the jury, the court remarked to counsel, "[y]ou know I believe very strongly in a person's right to present a legitimate claim to the Court and have their claim litigated, but I think I've done a very poor job in this case by not dismissing the Plaintiffs' claim long, long ago."

the alleged defects were the responsibility of Elkins Home Show to repair, or the amount of damages caused by the alleged defects. Mr. Moore, the Taylors' only expert on the alleged interior defects, testified that there were defects in the front door, kitchen floor, and cabinet knobs but that these defects were the responsibility of the manufacturer, not the retailer, to repair. Mr. Moore testified further that he found nothing wrong with the allegedly defective bathroom floor and back door. While Mr. Moore could not testify with certainty concerning the existence of an alleged crack in the skylight, he opined that any such defect would be the manufacturer's responsibility to repair. Concerning alleged defects in the heating and cooling system, Mr. Moore concluded that *if* the repair person sent by Elkins Home Show modified the duct work, as reported by Mr. Taylor, without prior approval by the system's design engineer, the system may no longer be in compliance with federal standards. Finally, Mr. Moore testified that there was a defect in the carpet seam which was the responsibility of Elkins Home Show to remedy, but he did not testify to the estimated cost to repair the defect.[11]

Most significantly, the record indicates that during the trial, counsel for the Taylors agreed that he presented no evidence on the cost of repair of the alleged interior defects. In light of this, all parties agreed that only claims for the footers, piers, perimeter block wall, and aggravation and inconvenience damages would be placed on the verdict form for the jury's consideration. Accordingly, issues concerning alleged interior defects were extinguished prior to the case going to the jury and will not be reconsidered by this Court.

■■■ The next issue for our consideration is the $4000.00 awarded by the jury for defects in the block wall. Mr. Taylor testified that the block wall was cracked and that, as a result, water came in under the house. E.J. Merritt testified that he saw cracks in the block wall and water underneath the house. Leff Moore testified that water is not sup-

posed to run underneath a house because it can cause sinking, sweating, and deterioration. He also testified, however, that he did not know the source of the water underneath the Taylors' house. Other evidence indicated that Mr. Taylor improperly installed the perimeter drain pipes which may have contributed to water collection under the house. Finally, Elkins Home Show adduced evidence that Mr. Taylor accidentally damaged the block wall himself while using his backhoe to correct the drain pipes, and that he allowed water to stand along the perimeter of the house.

Concerning the cost of repairing alleged defects in the block wall, the record indicates that at Mr. Taylor's request, Mr. Merritt gave an estimate for complete replacement of the footer, support piers, and perimeter block wall, in the amount of $26,907.00. $2,500.00 of this amount was specifically for replacement of the block wall. The circuit court ruled that Mr. Merritt's written estimate was too speculative and, therefore, inadmissible, but did allow the jury to consider Mr. Merritt's oral testimony on this issue.

■■■■ "In this jurisdiction the burden of proving damages by a preponderance of the evidence rests upon the claimant[.]" Syllabus Point 4, in part, *Sammons Bros. Const. Co. v. Elk Creek Coal Co.*, 135 W.Va. 656, 65 S.E.2d 94 (1951).

[T]he proper measure of damages in . . . cases involving building contracts is the cost of repairing the defects or completing the work and placing the construction in the condition it should have been if properly done under the agreement contained in the building contract. *Steinbrecher v. Jones*, 151 W.Va. 462, 476, 153 S.E.2d 295, 304 (1967).

Syllabus Point 2, *Trenton Const. Co., Inc. v. Straub*, 172 W.Va. 734, 310 S.E.2d 496 (1983) (per curiam). Further, "[t]he general rule with regard to proof of damages is that such proof cannot be sustained by mere speculation or conjecture." Syllabus Point 1, *Spencer v. Steinbrecher*, 152 W.Va. 490, 164 S.E.2d

11. Elkins Home Show objected to any testimony by Mr. Moore on the estimate to repair the defective carpet seam because an estimate had

not been provided in response to interrogatories, and the circuit court sustained the objection.

710 (1968). Rather, "[c]ompensatory damages recoverable by an injured party incurred through the breach of a contractual obligation must be proved with reasonable certainty." Syllabus Point 3, *Kentucky Fried Chicken of Morgantown v. Sellaro,* 158 W.Va. 708, 214 S.E.2d 823 (1975).

The problem with the Taylors' evidence on the allegedly defective block wall concerns the proof of damages. Neither Mr. Merritt, nor any other witnesses, opined that complete replacement of the wall was necessary to put the wall in the condition it should have been if properly constructed. As a result, the possibilities remain that the wall could have been repaired at a lesser cost, or perhaps not repaired at all since the wall was not weight-bearing, and the evidence was disputed whether cracks in the wall were the cause of water collecting under the house. We believe, therefore, that the cost of complete replacement of the wall, absent any evidence that complete replacement was necessary, constituted an improper measure of damages. As such, any amount of damages based on the cost of complete replacement of the perimeter block wall is mere speculation and fails under our rule which requires proof of damages with reasonable certainty. Accordingly, viewing the evidence in the light most favorable to the Taylors, we conclude that the Taylors failed to produce sufficient evidence on damages to the block wall to sustain a verdict on their behalf.

■ This leaves us to consider whether the circuit court properly granted judgment as a matter of law to Elkins Home Show on the jury award of $14,142.00 for aggravation and inconvenience. We have thus far determined that the Taylors failed to present sufficient evidence to sustain verdicts on both the alleged interior defects and alleged defects in the block wall. Absent sufficient proof that Elkins Home Show breached contractual duties owed to the Taylors or that any alleged breach damaged the Taylors, there is no basis under the law for an award of aggravation and inconvenience damages.

Accordingly, we find that the circuit court properly granted judgment as a matter of law to Elkins Home Show on the issue of aggravation and inconvenience damages.

## IV.

## CONCLUSION

For the reasons set forth above, we conclude that the Taylors failed, as a matter of law, to present sufficient evidence on their claims against Elkins Home Show.[12] Accordingly, the August 1, 2000 order of the Circuit Court of Randolph County which granted judgment as a matter of law on behalf of Elkins Home Show is affirmed.

Affirmed.

Chief Justice McGRAW dissents and reserves the right to file a dissenting opinion.

McGRAW, Chief Justice, dissenting.

(Filed Jan. 11, 2002)

I disagree with the majority opinion on two main points. First, I see no reason why the Court should not extend the reasoning of *Fayette County National Bank v. Lilly,* 199 W.Va. 349, 484 S.E.2d 232 (1997), to final orders granting judgment as a matter of law under Rule 50. Syllabus point three of *Lilly* requires that orders granting summary judgment "set out factual findings sufficient to permit meaningful appellate review." A well reasoned order by the lower court is just as helpful in the context of appellate review of a ruling on a motion for judgment as a matter of law, and should therefore be required.

Second, I have even greater reservations about the Court's rationalization for the lower court's award of such judgment in this case. Specifically, in this case there was evidence of defects in the trailer's foundation, as well as evidence concerning the cost of replacing the foundation. The majority opinion suggests that the plaintiffs had a burden to show that replacement, rather than a less costly repair, was necessary to correct the defects. The jury could have easily inferred

---

**12.** Considering that the Taylors paid a substantial sum of money for a mobile home which uncontradicted testimony indicates contained several interior defects which were the responsibility of the manufacturer of the home to repair, it is unfortunate that the manufacturer was not made a defendant in the Taylors' action below.

the necessity of replacing the foundation from the evidence presented.

At the very least, this Court should have held that the lower court abused its discretion in failing to award a new trial, rather than affirming the lower court's decision. In an analogous case concerning breach of warranty, the Eleventh Circuit Court of Appeals held that the trial court should have remedied an insufficiency of proof by granting a new trial rather than ordering judgment for the seller, where the defect in proof was possibly remediable upon retrial. *See Network Publications, Inc. v. Ellis Graphics Corp.*, 959 F.2d 212 (11th Cir.1992); *see also* 9A Wright & Miller, *Federal Practice and Procedure* § 2538, at 357 (2d ed.1995). This case would have benefitted, in my opinion, from a similar approach. Therefore I must respectfully dissent.