IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

————————————

No. 24-661

————————————

**FILED**

**May 21, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

COROTOMAN, INC.,
Petitioner

v.

CENTRAL WEST VIRGINIA REGIONAL AIRPORT AUTHORITY, INC.,
Respondent

_____

Certified Question from the
United States Court of Appeals for the Fourth Circuit
The Honorable Roger L. Gregory, United States Circuit Judge
Appeal No. 23-1873

CERTIFIED QUESTION ANSWERED

_____

Submitted: March 24, 2026
Filed: May 21, 2026

Mark R. Sigmon, Esq.
Pro Hac Vice
Milberg Coleman Bryson
Phillips Grossman, PLLC
Raleigh, North Carolina
James C. Wright, Esq.
Hartley Law Group, PLLC
Wheeling, West Virginia
Counsel for Petitioner

Mychal S. Schulz, Esq.
Austin D. Rogers, Esq.
Babst, Calland, Clements & Zomnir, P.C.
Charleston, West Virginia
Counsel for Respondent

JUSTICE WOOTON delivered the Opinion of the Court.

JUDGE WHITE concurs and reserves the right to file a separate opinion.

CHIEF JUSTICE BUNN, deeming herself disqualified, did not participate in the decision of this case.

JUSTICE TRUMP, deeming himself disqualified, did not participate in the decision of this case.

JUDGE MCLAUGHLIN, sitting by designation.

JUDGE WHITE, sitting by designation.

1.     "A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court." Syl. Pt. 1, *Light v. Allstate Ins. Co.*, 203 W. Va. 27, 506 S.E.2d 64 (1998).

2.     "'The proper measure of damages in . . . cases involving building contracts is the cost of repairing the defects or completing the work and placing the construction in the condition it should have been if properly done under the agreement contained in the building contract.' *Steinbrecher v. Jones*, 151 W.Va. 462, 476, 153 S.E.2d 295, 304 (1967)." Syl. Pt. 2, *Trenton Constr. Co. v. Straub*, 172 W. Va. 734, 310 S.E.2d 496 (1983).

3.     "The burden of proving damages by a preponderance of the evidence rests upon the claimant[.]" Syl. Pt. 4, in part, *Sammons Bros. Const. Co. v. Elk Creek Coal Co.*, 135 W. Va. 656, 65 S.E.2d 94 (1951).

4.     "Compensatory damages recoverable by an injured party incurred through the breach of a contractual obligation must be proved with reasonable certainty." Syl. Pt. 3, *Kentucky Fried Chicken of Morgantown v. Sellaro*, 158 W. Va. 708, 214 S.E.2d 823 (1975).

5.     The gross disproportionality rule may apply in a breach of a construction contract dispute.  Gross disproportionality is calculated by using the diminution in value approach, which measures the difference in value between what is built

(the value of the property/structure without the contracted work) and what was supposed to have been built (the value of the property/structure if the contracted work had been performed).  The breaching party has the burden of invoking and proving gross disproportionality.  If the breaching party does not prove gross disproportionality, then the non-breaching party's proven measure of damages applies.

WOOTON, Justice:

The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit")

certified the following question to this Court:

> Whether, in the appropriate case, West Virginia courts would apply the gross disproportionality rule to limit an injured party's damages in a breach of a construction contract dispute; and, if so, how gross disproportionality is calculated, which party (the breaching party or the injured party) bears the burden of proving gross disproportionality and the specific amount of the alternative form of damages, and what is the consequence of that party failing to meet its burden.

*Corotoman, Inc. v. Cent. W. Va. Reg'l Airport Auth., Inc.*, No. 23-1873, 2024 WL 3466439,

at *1 (4th Cir. 2024).

This question arises from a breach of a construction contract lawsuit filed by

Petitioner, Corotoman, Inc. ("Corotoman"), against Respondent, the Central West Virginia

Regional Airport Authority ("Airport Authority"). The United States District Court for the

Southern District of West Virginia ("district court") ruled that the Airport Authority

breached the contract by failing to remove a hill from Corotoman's land and granted partial

summary judgment in Corotoman's favor. However, the district court determined that the

gross disproportionality rule applied and only awarded Corotoman nominal damages.

Corotoman appealed the district court's order to the Fourth Circuit, and it certified the

above question to this Court.

1

After review, we conclude that (1) the gross disproportionality rule may apply in a breach of a construction contract dispute; (2) gross disproportionality is calculated by using the diminution in value approach, which measures the difference in value between what is built (the value of the property/structure without the contracted work) and what was supposed to have been built (the value of the property/structure if the contracted work had been performed); (3) the breaching party has the burden of invoking and proving gross disproportionality; and (4) if the breaching party does not prove gross disproportionality, then the non-breaching party's proven measure of damages applies.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At the outset, we emphasize that the certified question only raises issues of law. While both parties understandably present detailed arguments addressing what the facts did or did not reveal below, our sole task is to answer the legal issues raised by the certified question.[1] With this caveat in mind, we proceed with an abbreviated discussion of the factual and procedural background.

The Airport Authority operates Yeager Airport in Charleston, West Virginia. In the mid-2000s, the Airport Authority decided to remove a large hill, also referred to as a knoll, at the end of the airport's runway. The Airport Authority obtained grants from the

---

[1] When this Court reviews the factual and procedural history relating to a certified question from a federal court, we typically consider the facts as they are relayed by the certifying court, although we may also consider the record before that court. *See* Syl. Pt. 2, *Valentine v. Sugar Rock, Inc.*, 234 W. Va. 526, 766 S.E.2d 785 (2014).

Federal Aviation Administration to acquire the property that would be affected by the removal of the knoll. Corotoman owned some of the property that the Airport Authority sought to acquire.

In 2010, the Airport Authority retained an appraiser who concluded that Corotoman's subject property was worth $180,000. The Airport Authority offered Corotoman $260,125 for the property. Corotoman rejected this offer. The parties then entered into an agreement providing, among other things, that the Airport Authority could enter Corotoman's property and remove the knoll. Per the agreement, after the Airport Authority removed the knoll, it would overblast[2] Corotoman's property to decrease the elevation an additional thirty-five feet, making it flatter and easier for Corotoman to develop. Regarding damages, the agreement stated that

> in the event of a breach occurring after commencement of the Project, Corotoman may, in its discretion and as the circumstances reasonably dictate, revoke the License granted herein and/or seek the greater of either (1) actual, compensatory, consequential, and/or incidental damages or (2) liquidated damages in the amount of ten thousand dollars ($10,000.00) per breach.

The Airport Authority completed the knoll removal project but failed to perform the overblasting. In 2019, Corotoman sued the Airport Authority in federal district

---

[2] Overblasting is a process by which holes are drilled to the required depth and then explosives are placed in the holes and detonated to loosen the land.

court, claiming breach of contract. The district court granted Corotoman's motion for partial summary judgment, concluding that the Airport Authority breached the agreement by failing to overblast the land, and that no valid defenses excused the breach. *Corotoman, Inc. v. Cent. W. Va. Reg'l Airport Auth., Inc.*, 582 F. Supp. 3d 343, 354 (S.D.W. Va. 2022).

To determine damages, each party submitted evidence, including expert reports on the cost to complete the overblasting. The parties ultimately agreed that the cost to complete the overblasting was $4,381,080.[3] The district court found that "the cost of completion as estimated by the expert reports of either party would be grossly disproportionate to the value of the land." *Corotoman, Inc. v. Cent. W. Va. Reg'l Airport Auth., Inc.*, No. 2:21-CV-00545, 2023 WL 4834954, at *7 (S.D.W. Va. July 27, 2023). Further, the district court stated that it could not establish the current value of the Corotoman property because the 2010 appraisal was "too outdated, both in terms of current property values and the current condition of the property." *Id.* It held that awarding cost-to-complete damages, i.e., damages representing the cost to complete the overblasting, would "serve only to penalize the Airport Authority and act as a windfall to Corotoman, rather than placing Corotoman in the position it would be in absent the breach." *Id.* at *8. Thus, it concluded that Corotoman was only entitled to diminution in value damages (damages in the amount that the property value would decrease as a result of the breach).

---

[3] Corotoman's expert opined that the cost to complete the overblasting was approximately $14,000,000. The Airport Authority's expert estimated that it would cost $4,381,080. Corotoman agreed to accept the $4,381,080 estimate.

4

*Id.* Finding that "the record is devoid of any evidence that would allow the Court to determine the diminution in value caused by the Airport Authority's breach," the district court ruled that Corotoman had failed to meet its burden of proving damages beyond mere speculation and that Corotoman was only entitled to nominal damages. *Id.* at *9.

Corotoman appealed to the Fourth Circuit, arguing that the district court erred by failing to award cost to complete damages. The Fourth Circuit sua sponte certified the question to this Court pursuant to the Uniform Certification of Questions of Law Act, West Virginia Code §§ 51-1A-1 through -13. This Court accepted the certified question and set the matter for oral argument.

## II. STANDARD OF REVIEW

Our standard of review is as follows: "A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court." Syl. Pt. 1, *Light v. Allstate Ins. Co.*, 203 W. Va. 27, 506 S.E.2d 64 (1998). With the foregoing in mind, we address the certified question.

## III. ANALYSIS

The certified question raises four issues of law: (1) in a breach of a construction contract case, would this Court apply the gross disproportionality rule to limit an injured party's damages; (2) if so, how is gross disproportionality calculated; (3) which party (the breaching party or the injured party) bears the burden of proving gross

5

disproportionality and the specific amount of the alternative form of damages; and (4) what is the consequence of that party failing to meet its burden. We address each of these issues in turn.

## 1. Applying the Gross Disproportionality Rule

The first issue is whether this Court would apply the gross disproportionality rule in a breach of a construction contract case. Corotoman and the Airport Authority both assert that this question should be answered in the affirmative. We agree.

This Court has addressed the measure of damages in a breach of a construction contract case, holding that

> "[t]he proper measure of damages in . . . cases involving building contracts is the cost of repairing the defects or completing the work and placing the construction in the condition it should have been if properly done under the agreement contained in the building contract." *Steinbrecher v. Jones*, 151 W.Va. 462, 476, 153 S.E.2d 295, 304 (1967).

Syl. Pt. 2, *Trenton Constr. Co. v. Straub*, 172 W. Va. 734, 310 S.E.2d 496 (1983) ("*Straub*").[4]

The foregoing rule is referred to as the "cost approach." While the cost approach is the normal or default measure of damages in breach of construction contract

---

[4] We have held that "[p]roof of damages under a building contract can not be based on speculation or conjecture as to the amount of damages." Syl. Pt. 5, *Steinbrecher v. Jones*, 151 W. Va. 462, 153 S.E.2d 295 (1967).

cases, this Court has noted that some states apply an alternative measure of damages "where extensive reconstruction is necessary at a cost grossly disproportionate to the value of the structure." *Straub*, 172 W. Va. at 737, 310 S.E.2d at 499. This alternative measure of damages involves the application of the gross disproportionality rule.[5]

By way of background, the gross disproportionality rule has been extensively analyzed by legal treatises and widely applied by courts in other jurisdictions in breach of construction contract cases as an alternative measure of damages when repair, replacement or completion costs vastly exceed actual damages.[6] The rationale underlying the rule is

---

[5] The gross disproportionality rule is often used interchangeably with "the economic waste doctrine." As one law review article noted:

> In contract law, the economic waste doctrine is often described as the jurisprudential justification for providing an alternative measure of damages (i.e., diminution in value) in connection with the breach of a contract when it is shown that the preferred measure of cost of performance has no rational relationship to the objective or market value such cost will achieve. This alternative measure of damages generally has been reserved for construction contracts.

Juanda Lowder Daniel & Kevin Scott Marshall, *Avoiding Economic Waste in Contract Damages: Myths, Misunderstanding, and Malcontent*, 85 Neb. L. Rev. 875, 879-80 (2007) (footnotes omitted).

[6] Judge Cardozo wrote the seminal case on the rule in *Jacob & Youngs, Inc. v. Kent*, 129 N.E. 889 (N.Y. 1921). In *Kent*, a contract for the construction of a house required the use of a specific brand of plumbing pipe. *Id.* at 890. A subcontractor's oversight led to the installation of a different brand of pipe than that specified in the contract. *Id.* Although the pipes were of similar quality, the homeowner demanded that the builder tear out the installed pipe and replace it with the brand specified in the contract. *Id.* To tear out the

(continued . . .)

7

that "if the cost to repair or restore a defect is so high as to exceed the diminished value of the property based on the defect, a party is unlikely to use the extra money to fix the defect. Instead, the party will keep the money and receive a windfall." *Champion Cos. of Wisconsin, Inc. v. Stafford Dev., LLC*, 794 N.W.2d 916, 919 (Wis. Ct. App. 2010).

The Restatement (Second) of Contracts adopted the gross disproportionality rule, providing that where a breach of a construction contract results in defective or unfinished construction, the plaintiff "may recover damages based on (a) the diminution in the market price of the property caused by the breach, or (b) the reasonable cost of completing performance or of remedying the defects **if that cost is not clearly disproportionate to the probable loss in value to him**." Restatement (Second) of Contracts § 348(2) (1981) (Emphasis added). The Restatement provides that where the "cost to remedy the defects will be clearly disproportionate to the probable loss in value to the injured party" such that the injured party would receive a windfall,

---

pipe, the builder needed to demolish substantial parts of the completed structure. When the builder refused to replace the pipe, the homeowner sued. *Id.* The court determined that under the circumstances:

> [T]he measure of [damages] is not the cost of replacement, which would be great, but the difference in value, which would be either nominal or nothing. . . . The owner is entitled to the money which will permit him to complete, unless the cost of completion is grossly and unfairly out of proportion to the good to be attained. When that is true, the measure [of damages] is the difference in value.

*Id.* at 891.

8

> [s]uch an award will not be made. . . . If an award based on the cost to remedy the defects would clearly be excessive and the injured party does not prove the actual loss in value to him, damages will be based instead on the difference between the market price that the property would have had without defects and the market price of the property with the defects.

*Id.* at cmt. c.

The gross disproportionality rule has been widely applied by courts in other jurisdictions. The Washington Supreme Court held that the injured party in a breach of a construction contract case should be awarded "the cost of replacing defective items, unless the cost of replacement is clearly disproportionate to the value of the benefit conferred by replacement." *Eastlake Constr. Co. v. Hess*, 686 P.2d 465, 475 (Wash. 1984) (internal citation and quotation omitted). Similarly, the Virginia Supreme Court held that applying the cost approach is proper where it

> would not involve unreasonable destruction of work done by the contractor and the cost thereof would not be grossly disproportionate to the results to be obtained. . . . In this context, we have further observed that the cost measure [of damages] is appropriate unless the cost to repair . . . would involve unreasonable economic waste.

*Nichols Constr. Corp. v. Virginia Mach. Tool Co., LLC*, 661 S.E.2d 467, 472 (Va. 2008) (internal citation and quotation omitted). The Georgia Supreme Court held that "damages for defective construction, whether those damages are the result of a breach of contract or negligence of the contractor, are determined by measuring the cost of repairing or restoring the damage, unless the cost of repair is disproportionate to the property's probable loss of

9

value." *John Thurmond & Assocs., Inc. v. Kennedy*, 668 S.E.2d 666, 668 (Ga. 2008) (citation omitted).[7]

This Court recognized the existence of the gross disproportionality rule in *Steinbrecher*, albeit not in a syllabus point, stating that

> [a]s a general rule, the proper measure of damages in such cases involving building contracts is the cost of repairing the defects or completing the work and placing the construction in the condition it should have been in if properly done under the agreement contained in the building contract. **The alternate rule in some states relating to the measure of damages as being the difference in value between what is built and what was supposed to have been built, sometimes applied where extensive reconstruction is necessary at a cost grossly disproportionate to the value of the structure**, is not involved under the facts presented by the evidence produced at the trial held in this present case, so we do not need to discuss it.

151 W. Va. at 476, 153 S.E.2d at 304 (emphasis added).

Consistent with this Court's previous recognition of the gross disproportionality rule, as well as its widespread acceptance by legal scholars and its application by courts in other jurisdictions, we answer the first part of the certified question

---

[7] *See also Willie's Constr. Co., Inc. v. Baker*, 596 N.E.2d 958 (Ind. Ct. App. 1992); *Council of Unit Owners of Sea Colony East, Phase III Condominium, on Behalf of Ass'n of Owners v. Carl M. Freeman Associates, Inc.*, 564 A.2d 357 (Del.Super.Ct. 1989); *Rivers v. Deane*, 209 A.D.2d 936 (N.Y.App.Div.1994).

as follows: the gross disproportionality rule may apply in a breach of a construction contract dispute.

## 2. Calculating Gross Disproportionality

Next, the certified question asks how this Court would calculate gross disproportionality. Corotoman argues that we should apply the diminution in value approach. Diminution in value is calculated by measuring the difference in value between what was built and what was supposed to have been built. According to Corotoman, the proper measure of damages in a breach of a construction contract case is the cost to complete, unless the cost to complete is grossly disproportionate to the diminution in value, in which case the measure of damages is the diminution in value amount itself. In support of this argument, Corotoman cites numerous legal treatises and cases from other jurisdictions, and it asserts that the diminution in value approach is the majority rule on this issue. Conversely, the Airport Authority asserts that "gross disproportionality is calculated by examining the cost of completion or repair and the value of the structure—not the cost of completion and the diminution in value of the property."

Upon review, we find that in a breach of a construction contract case, gross disproportionality is calculated by using the diminution in value approach which measures the difference in value between what is built (the value of the property/structure without the contracted work) and what was supposed to have been built (the value of the property/structure if the contracted work had been performed). We arrive at this conclusion

11

based on (1) this Court's brief discussion of this issue in *Steinbrecher* and *Straub*; (2) the weight of authority from courts in other jurisdictions; and (3) legal treatises that have addressed this issue.

This Court briefly addressed the gross disproportionality rule in *Steinbrecher*. While we determined that the rule was not implicated under the specific facts of that case, we noted that "[t]he alternate rule in some states relating to the measure of damages as being **the difference in value between what is built and what was supposed to have been built**, sometimes applied where extensive reconstruction is necessary at a cost grossly disproportionate to the value of the structure[.]" 151 W. Va. at 476, 153 S.E.2d at 304 (emphasis added). We recognized this alternate rule and measure of damages again in *Straub*, noting that the gross disproportionality rule has been applied by other states and that the measure of damages under this rule "**is the difference in value between what is built and what was supposed to have been built**." *Straub*, 172 W. Va. at 737, 310 S.E.2d at 499 (emphasis added). As in *Steinbrecher*, the Court in *Straub* determined that the gross disproportionality rule was not implicated under the specific facts of that case. While neither *Steinbrecher* nor *Straub* discussed this issue in detail, we find it noteworthy that in both cases, the Court recognized that the diminution in value approach—the difference in value between what is built and what was supposed to

12

have been built—is the applicable measure of damages under the gross disproportionality rule.

The majority rule courts in other jurisdictions use when applying an alternative measure of damages is diminution in value.[8] The Oregon Supreme Court addressed this issue in a breach of a construction contract case and provided that

> Oregon courts use an alternative measure of damages—the diminution in the market value of the property—when the cost of repair is not the prudent remedy to apply because that remedy would create economic waste. . . . In the case of economic waste, damages will be measured not by the cost of remedying the defect, but by the difference between the value of the building as it is and what it would have been worth if it had been built in conformity with the contract—in other words, the diminution in value.

*Montara Owners Ass'n v. La Noue Dev., LLC*, 353 P.3d 563, 571 (Or. 2015) (internal citation and quotation omitted).

Further, in Virginia, courts apply the cost rule as the default measure of damages in breach of construction contract cases unless "the cost to repair . . . would

---

[8] *See* John P. Ludington, Annotation, *Modern Status of Rule as to Whether Cost of Correction or Difference in Value of Structures is Proper Measure of Damages for Breach of Construction Contract*, 41 A.L.R.4th 131, § 2[b] (1985) (recognizing that the most "widely applied difference-in-value measure is the diminution-in-value-of-market-price measure, under which the owner's damages are measured by the difference in value between the structure as delivered and the structure as contracted for. . . . Under [this] rule, the measure is market price or fair market value, determined at or immediately after the contractor's breach.").

involve unreasonable economic waste." *Nichols Constr. Corp.*, 661 S.E.2d at 472. Virginia courts calculate economic waste by comparing "the difference between the value of the [structure] properly completed according to the contract and the value of the defective structure." *Id.* (internal cite omitted). Similarly, an appellate court in Wisconsin addressed this issue and stated that the gross disproportionality calculation is arrived at by measuring "the difference between the value the building would have had if properly constructed and the value that the building does have as constructed." *Champion Co. of Wisconsin, Inc.*, 794 N.W.2d at 919.

The Missouri Court of Appeals noted that there are two methods for calculating damages in a breach of a construction contract case:

> The first method, "cost of repair," calculates the cost of repairing the defective work. The second method, "diminution in value," is the difference between the value of the property with the defective work and what its value would have been if it had been constructed according to the terms of the contract.

*Ince v. Money's Bldg. & Dev., Inc.*, 135 S.W.3d 475, 479 (Mo.Ct.App. 2004). This approach was also recognized in *Douglass v. Licciardi Construction Co., Inc.*, 562 A.2d 913 (Pa.Super.Ct.1989), in which the measure of damages in a breach of a construction contract case was described as follows:

> Pennsylvania courts . . . have generally allowed damages for incomplete or defective performance of a building contract to be measured by the cost of completing the work or correcting the defects by another contractor. . . . It is only where the cost of completing performance or of remedying the defects is clearly disproportionate to the probable loss in value to the

14

injured party that damages will be measured by the difference between the market price that the property would have had without the defects and the market price of the property with the defects.

562 A.2d at 915-16 (internal citation omitted).

Additionally, the Tennessee Court of Appeals held that while the cost measure will generally be used as the measure of damages in a breach of a construction contract case, "in the event that the cost of repairs is disproportionate when compared with the difference in value of the structure actually constructed and the one contracted for, the diminution value may be used instead as the measure of damages." *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 543 (Tenn. Ct. App. 2005).

Legal treatises addressing breach of construction contracts have also adopted the diminution in value calculation when the gross disproportionality rule is implicated. The Restatement (Second) of Contracts provides that "[i]f a breach results in defective or unfinished construction and the loss in value to the injured party is not proved with sufficient certainty, he may recover damages based on . . . the diminution in the market price of the property caused by the breach[.]" § 348(2)(a). Another legal treatise discussing this issue recognized that the most

> widely applied difference-in-value measure is the diminution-in-value-of-market-price measure, under which the owner's damages are measured by the difference in value between the structure as delivered and the structure as contracted for. . . . Under [this] rule, the measure is market price or fair market

15

value determined at or immediately after the contractor's breach.

Ludington, 41 A.L.R.4th 131, § 2[b]. Likewise, another treatise observed that

> [m]ost courts also subscribe to a qualification of the cost to complete or repair properly rule, the so-called economic waste principle . . . Under this principle, if repairing or reconstructing a structure would constitute an unreasonable economic waste, the measure of an owner's damages for the contractor's breach of contract is the difference in value between the structure as built and the structure as contracted for.

24 Williston on Contracts § 66:17 (4th ed. 2025).

Based on the foregoing, we answer the second part of the certified question as follows: in a breach of a construction contract case, gross disproportionality is calculated by using the diminution in value approach which measures the difference in value between what is built (the value of the property/structure without the contracted work) and what was supposed to have been built (the value of the property/structure if the contracted work had been performed).

### 3. Which Party has the Burden of Proving Gross Disproportionality

The third issue raised by the certified question asks which party, the breaching party or the injured party, has the burden of proving gross disproportionality. Corotoman, citing numerous cases from other jurisdictions and secondary sources that specifically address this issue, asserts that the breaching party has the burden of proving

gross disproportionality. By contrast, the Airport Authority largely relies on the general principle that a plaintiff bears the burden of proving each element of his or her claim, including damages. Therefore, according to the Airport Authority, the plaintiff has the burden of proving gross disproportionality. After review and as explained below, we find that the breaching party has the burden of proving gross disproportionality.

We begin by noting that the burden of proving gross disproportionality involves a two-step process. First, the plaintiff/injured party bears the initial burden and must establish damages under the default rule (cost to replace, repair, or complete). It is well established that "the burden of proving damages by a preponderance of the evidence rests upon the claimant[.]" Syl. Pt. 4, in part, *Sammons Bros. Constr. Co. v. Elk Creek Coal Co.*, 135 W. Va. 656, 65 S.E.2d 94 (1951). *See* Syl. Pt. 3, *Kentucky Fried Chicken of Morgantown v. Sellaro*, 158 W. Va. 708, 214 S.E.2d 823 (1975) ("Compensatory damages recoverable by an injured party incurred through the breach of a contractual obligation must be proved with reasonable certainty."). The second step occurs after the plaintiff satisfies this initial burden.[9] The breaching party may then invoke the gross disproportionality rule and attempt to prove that the cost to repair, replace or complete is grossly disproportionate to the diminution in value of the property. *See Douglass v.*

---

[9] We emphasize that the plaintiff must always satisfy each element of the claim or claims asserted in the complaint. However, as one court addressing this issue aptly noted, "proof of diminution in value is not a required element of the injured party's case." *Martin v. Design Constr. Servs., Inc.*, 902 N.E.2d 10, 15 (2009).

17

*Licciardi Constr. Co.*, 562 A.2d 913, 916 (Pa. Super. Ct.1989) ("Where the cost of remedying the defects in construction is not clearly disproportionate to the probable loss in value to the injured party, the breaching contractor cannot require that the injured party's damages be measured by the difference between the market price of the property without the defects and the price of the property with the defects.").

Courts in other jurisdictions have examined this issue and concluded that the breaching party has the burden of proving gross disproportionality. *See*, *e.g.*, *John Thurmond & Associates*, 668 S.E.2d at 669 (explaining that once the plaintiff presented sufficient evidence to satisfy its initial burden on the cost of repair measure of damages, "the defendant has the burden to present any contradictory evidence challenging the reasonableness or proportionality of those damages and where appropriate, evidence of an alternative measure of damages for the jury's consideration."); *GSB Contractors, Inc.*, 179 S.W.3d at 543 ("We hold that the plaintiffs do not have the burden of offering alternative measures of damages. The burden is on the defendant to show that the cost of repairs is unreasonable when compared to the diminution in value due to the defects and omission."); *Rogers v. Superior Metal, Inc.*, 480 S.W.3d 480, 483 (Mo.Ct.App. 2016) ("Once the landowner presents evidence on the cost of repair or replacement, the contractor has the burden of presenting evidence that the cost of repairing or replacing the property is disproportionate to the diminution in value of the property."); *Legacy Builders, LLC v. Andrews*, 335 P.3d 1063, 1070 (Wyo. 2014) ("We hold that, while the plaintiff has the burden of proving damages at trial, it is the defendant's burden to challenge the

reasonableness or disproportionality of the plaintiff's method and, where appropriate, to present evidence supporting an alternative measure of damages. The [plaintiffs] met their burden of establishing the damages for [defendant's] breach of contract based on reasonable cost of repairs. [Defendant] then bore the burden of presenting evidence of disproportionality or of an alternative measure of damages. Because [defendant] presented no such evidence, the district court's award of damages based on the [plaintiffs'] cost of repair evidence is affirmed."); *Andrulis v. Levin Constr. Corp.*, 628 A.2d 197, 208 (Md. 1993) (holding that "the burden of proving economic waste is on the party that breached the contract and that invokes the doctrine[.]"); *Stangl v. Todd*, 554 P.2d 1316, 1320 (Utah 1976) ("The contract breaker should pay the cost of construction and completion in accordance with his contract, unless he proves, affirmatively and convincingly, such construction and completion would involve an unreasonable economic waste.").

Likewise, legal treatises addressing this issue have overwhelmingly concluded that the breaching party bears the burden of proving gross disproportionality. One such treatise explained that "[o]nce the landowner presents evidence on the cost of repair or replacement, the contractor has the burden of presenting evidence that the cost of repairing or replacing the property is disproportionate to the diminution in value of the property[.]" Sonja Larsen, *Measure of Damages for Breach of Construction Contract by Cost to Complete or Repair*, 13 Am. Jur. 2d Building, Etc. Contracts § 74 (2026). *See also* 11 Corbin on Contracts, § 60.1, 614-15 (2005) (burden on contractor guilty of breach to prove award of repair costs constitutes economic waste); 24 Williston on Contracts § 66:17

19

(4th ed. 2025) ("Once the landowner presents evidence on the cost of repair or replacement, the contractor has the burden of presenting evidence that the cost of repairing or replacing the property is disproportionate to the diminution in value of the property. The contractor has the burden of showing that the cost of repair would result in economic waste. If the contractor presents no evidence of the value of the building as actually constructed, a trial court does not err in applying the cost measure of damages." (Internal footnotes omitted)).

Based on the foregoing, we find that the clear weight of authority establishes that the burden is on the breaching party to invoke and prove gross disproportionality. Therefore, we answer the third part of the certified question as follows: the breaching party has the burden of invoking and proving gross disproportionality.[10]

**4. Consequence of the Breaching Party Failing to Prove Gross Disproportionality**

---

[10] Once gross disproportionality has been proven by the breaching party, a court can adopt the diminution in value calculation, rather than the cost approach, as the plaintiff's measure of damages. Further, once gross disproportionality is proven, the burden shifts back to the plaintiff to rebut the breaching party's calculation of proposed diminution in value if the plaintiff disagrees with that calculation. We emphasize that each breach of a construction contract case will present a unique set of facts that must be assessed on a case-by-case basis. *See St. Louis, L.L.C. v. Final Touch Glass & Mirror, Inc.*, 899 A.2d 1018, 1024-25 (N.J.App. Div. 2006) ("Whether the cost of repair or diminution in value is the measure of damages rests in good sense rather than in a mechanical application of a single formula, and we have in the past described the appropriate measure of damages for an injury to real property as a complex subject that requires a response in a great variety of ways depending upon the evidence in the particular case. Generally, either diminution in the value of the property or the reasonable cost of restoring or repairing the damage may be appropriate.") (citations and inner quotations omitted).

Finally, we address the consequence of the breaching party's failure to prove gross disproportionality. Corotoman argues that if the breaching party fails to prove gross disproportionality, the court should apply the non-breaching party's proven measure of damages (the cost to repair, replace, or complete).[11] We agree.

The clear weight of authority establishes that if the breaching party fails to prove gross disproportionality, courts will apply the non-breaching party's proven measure of damages, which is normally the cost approach. One legal treatise addressing this issue provided that after the landowner presents evidence of the cost of repair or replacement, the burden shifts to the breaching contractor to prove gross disproportionality. Larsen, 13 Am. Jur. 2d Building, Etc. Contracts § 74. The treatise then noted the consequence of the contractor's failure to satisfy that burden: "**[I]f the contractor presents no evidence of the value of the building as actually constructed, a trial court does not err in applying the cost measure of damages**." *Id.* (Emphasis added). Similarly, the Supreme Court of Wyoming stated that

> [t]he [plaintiffs] met their burden of establishing the damages for [defendant's] breach of contract based on reasonable cost of repairs. [Defendant] then bore the burden of presenting evidence of disproportionality or of an alternative measure of damages. **Because [defendant] presented no such evidence, the district court's award of damages based on the [plaintiffs'] cost of repair evidence is affirmed.**

---

[11] Because the Airport Authority argued that the non-breaching party has the burden of proving gross disproportionality, it did not address this specific issue, i.e., what is the consequence of the breaching party's failure to prove gross disproportionality.

*Legacy Builders, LLC*, 335 P.3d at 1070 (emphasis added). *See also GSB Contractors*, 179 S.W.3d at 543 ("Because the burden to produce an alternative measure of damages was on the defendant who failed to meet that burden, proof of the cost of repairs alone was a sufficient basis on which to submit the question of damages to the jury. Therefore[,] the decision of the trial court must be affirmed.").

Based on the foregoing, we answer the fourth part of the certified question as follows: if the breaching party does not prove gross disproportionality, then the non-breaching party's proven measure of damages applies.

## IV. CONCLUSION

Having answered the four issues raised by the certified question, we now hold that the gross disproportionality rule may apply in a breach of a construction contract dispute. Gross disproportionality is calculated by using the diminution in value approach, which measures the difference in value between what is built (the value of the property/structure without the contracted work) and what was supposed to have been built (the value of the property/structure if the contracted work had been performed). The breaching party has the burden of invoking and proving gross disproportionality. If the breaching party does not prove gross disproportionality, then the non-breaching party's proven measure of damages applies.

Certified Question Answered.